PYRAMID LIFE INSURANCE COMPANY v. BELMONT.

Opinion delivered June 11, 1928.

*Brooks Hays* and *Marsh, McKay & Marlin,* for appellant.

*Coulter & Coulter,* for appellee.

MEHAFFY, J. Appellant brought this suit in the Union Circuit Court to recover from the appellee the sum of $1,611 and interest upon a note, said note having been given for first premium on a life insurance policy.

Defendant answered, specifically denying the allegations of the complaint, and denied that policy was ever delivered to him by the company, or that it was ever intended by the parties to be delivered. He further alleged that the note was obtained on the fraudulent representation that it was necessary that the note accompany appellee's application for life insurance; that it was fraudulently represented to him that, in the event of a failure to issue and deliver the policy, said note would be canceled and returned to him; that no policy of any kind was ever issued or delivered to defendant. He further alleged that it was fraudulently represented to him that stock in the Pyramid Life Insurance Company in the sum of $1,000 would also be delivered to him, and that no stock of any kind had ever been delivered, and that there was a total failure of consideration for said note; that this suit was begun by plaintiff with a full knowledge of the above facts, and that no cause of action existed on the note; that, notwithstanding they knew all the facts, and knew there was no liability on the note, they sued out a writ of garnishment, and wrongfully, illegally and maliciously impounded his funds, and that he was damaged in the sum of $2,000.

The appellant introduced the following note:
"$1,611.                    El Dorado, Ark., 5-22, 1926.

"On or before ninety days after date, I, we, or either of us promise to pay to the order of myself or legal holder, one thousand six hundred eleven and no 100 dollars, for value received, negotiable and payable, without defalcation or discount, at the office of ..................., with

interest from date at the rate of 6 per cent. per annum, and at the rate of 10 per cent. per annum after maturity until paid. The makers and indorsers of this note hereby severally waive presentment for payment, notice of non-payment and protest.

"This note is given for premium for life insurance policy which has been issued in the form applied for and delivered to the maker of this note.

"Henry B. Belmont

"Garrett Hotel, P. O. El Dorado, Ark."

Indorsed at bottom of note in pencil: "Claude Hollan, 1027." Indorsed on back: "H. B. Belmont."

The appellee introduced the following testimony:

Brooks Hays testified that he was sales director and local counsel for the plaintiff. He had actual supervision of the sales contracts of the company. The original contract has been in the possession of Mr. Hollan ever since the date of issuance. Mr. Hollan is the local agent of the company. Does not know that he has seen the original policy. Might have looked at it in the court room. Hollan had it last spring in the court room, and tried to get appellee to take it, and he would not. The grace period had not expired at that time. The thirty days had not elapsed, and it was in force at that time. Twelve months had elapsed when witness tendered it to Mr. Coulter for the defendant. Witness did not become associated with the company until after this policy had been held by Mr. Hollan for some time. According to the company's viewpoint, the policy had been delivered. It held it for Mr. Belmont's benefit. This, referring to exhibit to pleadings, is a copy of the policy, and this is a photostatic copy of the application. The original application is very likely in their files, but this is an exact copy. The policy was not to be in force until it was delivered to applicant in good health, and premium paid. The premium was paid by note. The policy and application which is made a part of the policy is the usual contract of insurance, the parts of which that are material to the issues in this case are as follows:

"B. That every declaration hereinabove contained is true. That there shall be no contract of insurance until a policy shall have been delivered to me and the first premium paid to said company, or its duly authorized agent, during my lifetime and good health."

"I hereby declare that I have paid to Claud L. Hollan sixteen hundred eleven dollars in cash, and that I hold his receipt for same.

"Henry B. Belmont.
(Signature of applicant).

"Dated...........................................................
"Rec. note, $1,611."

The policy was sent to Belmont about September. No part of the note had been paid.

The appellee testified that he made application to Mr. Hollan for his policy of insurance. He stated: "About May of last year Hollan came to me and started talking about insurance, and I wouldn't listen to it; I told him I didn't have the money; and he kept on talking to me about it. If I would take out a policy he would give me some stock in the company, but I didn't have any money at that time, and he says, 'Well, you don't have to pay on your policy now, and the stock will be delivered to you.' He says: 'I will give you stock equivalent to $1,000,' and I says, 'Well, I will talk to you about it later'; so I took the matter into consideration, and he come back in the evening again, and I says, 'I will take out a policy for $25,000,' and he says, 'Well, the company don't write any more than $20,000 to one person,' and I told him, 'I want a $25,000 policy,' and he made up the application and passed it over for me to sign, and I thought he made it out like I told him to. He wrote up the application, and had me examined; and I says, 'When are you going to send me the policy?' and he says, 'You will get it in thirty days, the company will send it to you.' I didn't have any ready money, and I executed the note for the premium. Thirty days went by, and I never got nothing, and I met him and asked, 'Say, what is the matter with the policy?' and he said he would write to

the company and find out what was the matter. Ninety days went by, and I never got the policy. I asked him a dozen times about the policy, and in October I stopped him and says, 'Why didn't I get the policy? I haven't got it yet,' and he says, 'Is that so?' and I says, 'No.' A few days later he says he had the policy. He never did anything about it. In February he showed me the policy; that was nine or ten months after I made the application. When he showed me the policy I asked him if it was for $25,000, and he said no, it was for $20,000. I told him that was not the policy I ordered. He said the policy was in force when I paid the first premium, and said after the second premium was paid I would be entitled to $8,000, and I told him I did not order any policy like that. He told me it would be in force when I executed the note for the face of the policy. I asked him about the stock, and he said I would get it. I told him it was not satisfactory. He took it from my hand and put it in his envelope, and he never delivered it to me, and he never delivered me any stock. Two days later the bellboy came with a note with a check written out. I wouldn't sign the check, and then he told me he wanted me to sign the check; "it is important to the company; we want to put that paper in advertising." I did not sign the check nor anything. No one ever delivered to me this policy. I would not have accepted it if they had delivered it. It is not the kind of policy I bought. At the time they sued out a writ of garnishment in this cause I had checks outstanding. They were turned down on account of my money being garnished.

"I talked to Mr. Hollan about the policy, and I told him I wanted $100,000. I finally told him I would take $25,000, and we talked about $25,000 all the time. He said if I would sign the note my policy would be delivered in 30 days, but it was never delivered. Did not have a conversation in the Garrett Hotel, in the presence of Cubage and Claud Hollan, when he tendered me a policy for $20,000, and did not tell him as soon as a judgment was paid me I would pay it. Had conversations with

them, and knew Cubage. I told Hollan I would not have anything to do with it.''

This witness testified at length, but the substance of it was that he wanted a policy for $25,000, and never did agree to take a policy for less than $25,000; that he understood the face of the policy was to be paid, and afterwards found that the policy that Hollan had was for $20,000 only, and that it only provided for the payment of a portion the first year, a larger portion the second year, and the face of the policy after that.

Claud Hollan testified that he represented the appellant, writing insurance for it, taking applications. That Belmont did not apply for $25,000, but applied for $20,000. That the note sued on was the one executed by Hollan at the time, and he also executed a receipt which was introduced in evidence, which showed that Belmont had paid to Hollan $1,611, and on the bottom of it was written, "Note $1,611," signed "Henry B. Belmont." Took Belmont's application and sent it to the company, and it was in the neighborhood of 90 days before he got policy back from the company. When he got the policy the note was due. He called on Mr. Belmont and told him he had his policy and his note was due, and Belmont said he could not pay the note. "I told him to pay the interest and we would renew the note, and he said he couldn't pay anything until he got his money, and then he would pay the whole thing in advance. I told him it would be three years before he got his stock, and he said he wanted to pay all three years up when he got his money. I had this conversation with Belmont at the Garrett Hotel, in August, and then, in the latter part of September, tendered him the policy. Belmont stated, 'You hold the policy here.'" Witness sent the note back to the company.

Witness said he met Belmont in the lobby of the hotel, took him up to his room, and asked him about the payment of the note, and Belmont said he was drilling a well out south of town, and he says, "Just as soon as I get the money out of that well, I will pay you, or if I

get it out of my suit I will pay you." At that meeting, when he assured witness he would have the money in a few days, witness asked him if he did not want to buy $100,000. He said, "No, I have got $25,000 on the other," and I says, "No, not $25,000, but $20,000," and he just folded the policy up and handed me the policy, and he says, "You keep the policy until I can make enough to pay off the note, but I won't take any more insurance now." Mr. Belmont at the second meeting read most of the policy over. The policy was issued between 40 and 90 days after the application was signed. The insurance was in effect at the time the note was taken. The insurance company is in Little Rock, and the re-insurance company is in Des Moines, Iowa. "I gave him the policy with the Pyramid Life Insurance Company just like the other people receive. I offered to deliver this policy in August. His note was due at that time. Belmont handed the policy back to me to hold it until he paid the note. I was not holding it as security upon the note. The insurance was in force during all that time. When I gave him the policy, he kept it long enough to read it, and handed it back to me."

Cubage testified that he was in the Garrett Hotel, and heard a conversation between Hollan and Belmont, in which Hollan said, "When you bring in that well, I want to write you a policy for $100,000." Mr. Belmont said no, $25,000 was enough for him, and Mr. Hollan said he only had $20,000, and went and got Belmont's policy. Mr. Belmont said he thought it was $25,000, and said he did not want any more now. Mr. Belmont told Hollan just to keep the policy until he got his money, and he would get the money soon, and he need not worry about it.

We have set out the substance of the evidence, but it would serve no useful purpose to set it out in detail, but enough is set out to show the intention of the parties and the issues.

The court, at the request of the appellant, instructed the jury as follows:

"1. You are instructed that, the defendant having admitted the execution of the note sued on, the burden is upon him to show by a preponderance of the evidence in this case that the same is without consideration, and, unless you find from a preponderance of the evidence in this case that no consideration was given for the note sued upon or passed from the payee to the payer, then you will find for the plaintiff.

"2. You are instructed that if you find from the evidence that the insurance policy was issued by the plaintiff company on the life of Mr. Belmont, and that the same was tendered to him by the agent of the plaintiff company, and that the defendant asked the plaintiff's agent to keep the same for him until the note was paid, then you will find for the plaintiff the amount of the note sued upon."

"7. In determining whether or not there was a delivery of the policy in question, you are instructed that it is the intention of the parties and not the manual possession of the policy which controls, and if you find that an insurance policy was issued in the form applied for and was accepted by the insured, being thereafter treated as in force by the parties, the delivery is complete, though it remain in the hands of the insurer's agent, and if you do find that it was the intention of the parties that the contract should be considered in force, then your verdict should be for the plaintiff."

And the court refused to give the following instructions requested by appellant:

"3. You are instructed as a matter of law that the consideration for the note given was the issuance of the insurance policy referred to, by the plaintiff upon the life of the defendant, and if you find that said insurance policy was issued and was tendered to the defendant, that is sufficient consideration to support the note, and you will find for the plaintiff.

"4. You are instructed that, when the insurance company issued its policy of insurance as applied for upon the life of H. B. Belmont, defendant in this case,

it became bound to pay the same in the event of his death, and whether there was manual delivery and actual taking possession of the policy by H. B. Belmont is not material to the validity of the note sued upon, and if you find that said policy was so issued upon the application of the defendant, and that the defendant was notified thereof, then your verdict will be for the plaintiff.

"5. You are further instructed that the test as to whether there was a valid consideration for the note is whether or not the insurance company, plaintiff herein, became bound to the beneficiary named in the policy at any time to have paid the amount of the policy in event of the death of the defendant, and if the insurance company was bound to have paid the policy in the event of his death, then your verdict will be for the plaintiff.

"6. You are further instructed that, if the insurance company, plaintiff in this case, acting upon the application of the defendant, H. B. Belmont, and in consideration of the note sued upon, actually executed the policy of insurance, and tendered it to the defendant, then the company was liable for the amount of the policy in the event the defendant died during the life thereof, or the period for which said note was given to pay the premium, and your verdict will be for the plaintiff."

The following instructions were given at the request of the appellee:

"2. You are instructed that, unless you find from the evidence that plaintiff, Pyramid Life Insurance Company, issued to defendant a policy or certificate in the form applied for, and that the same was delivered to and accepted by defendant while he was in good health, your verdict should be for the defendant."

"4. You are instructed that, if you find from a preponderance of the evidence that the agent of plaintiff life insurance company made any material misrepresentations to the defendant by which he was induced to execute the application for insurance, either with reference to the terms and conditions of the policy or certificate itself, or with reference to the issuance and deliv-

ery of stock in the plaintiff company, such misrepresentations, when discovered by defendant, would be a complete justification for his refusing to accept such policy or certificate; and if you find that such representations were made, your verdict should be for the defendant.''

The jury returned a verdict for the defendant, and the plaintiff filed motion for new trial, which was overruled, exceptions saved, and this appeal prosecuted to reverse the judgment of the circuit court.

The appellant's first contention is that, under the undisputed testimony in this case, the contract of insurance was consummated upon the approval of the application by the company's medical director and became a complete and binding contract without the issuance or the delivery of the policy. In the application signed by Belmont, which is made a part of the policy, is the following clause: ''That there shall be no contract of insurance until a policy has been delivered to me and the first premium paid to said company, or its duly authorized agent, during my lifetime and good health.''

The appellant says that this was a part of the policy. It was attached to the policy, and it was therefore the intention of the parties expressed in writing that there should be no contract of insurance until the policy was delivered. It therefore appears clear from the contract entered into that there was to be no contract of insurance until the policy was delivered.

Suit was brought on a policy that contained the following statement in the application: ''That if this application is accepted, the policy issued hereunder shall not take effect until the first premium shall have been paid to and accepted by said company or its authorized agent and such policy delivered to and accepted by me, and all during my continuance and while I am in good health.'' The court, in construing this policy, said: ''It is elementary that delivery, either actual or constructive, of an instrument of writing of the character of this policy is essential to give it legal effect, and the stipulation quoted from the application for the policy in express

terms was that the policy should not take effect until it should be actually delivered to and accepted by the applicant. This was a clear and explicit agreement, the effect of which could not be varied by Stewart's intention that the policy should be effective as soon as he executed it. If he had actually tendered the policy, yet, under the terms of the agreement, it would not become a completed contract until accepted by Melton, and there was no evidence to show that he even intended to accept it until after he was fatally ill, and which illness precluded his right then to demand its delivery, according to the terms of his agreement with the company." *American Home Life Ins. Co. v. Melton,* 144 S. W. 362.

In the instant case substantially the same agreement was made in the application signed by Belmont. It was expressly agreed that there should be no contract of insurance until the policy was delivered. It therefore seems clear that the contract made by the parties and the agreement signed by Belmont and accepted by Hollan for the company were to the effect that there should be no contract of insurance until the policy was delivered, and it was not offered to be delivered for about 90 days. The understanding was that it should be delivered in 30 days.

We do not agree with appellant that the contract of insurance was consummated upon the approval of the application by the company's medical director and became a complete and binding contract without the issuance and delivery of the policy, because the application itself expressly stated that it should not be a contract of insurance until the policy was delivered. Therefore, if Belmont had died after his application had been approved by the medical director of the company, he could not have recovered the amount of the policy.

But appellant argues that a parol contract of insurance was entered into by the parties, which was binding upon the company when the application was approved by the medical director, and that the issuance of the policy and delivery to Belmont were not essential to the com-

pletion thereof. This contention is in the face of the policy itself, or the application which is attached to and made part of the policy.

It is a well established rule that, whatever agreements may be made, or whatever conversation or statements precede a written contract, when the writing is signed, as it was in this instance, it takes the place of all the discussions and propositions preceding it. It is admitted by appellant that there is nothing in the application or in the policy to the effect that the insurance was to become effective upon the approval of the application by the medical director, but it insists that it was agreed that it should be effective from the date of the note and application. And the application provides for the medical examination, as well as the delivery of the policy, before it can become effective.

It is true that contracts of insurance may be made by parol, and delivery of the policy is not essential to the completion of the contract in such cases; but that is where the minds of the insured and insurer, for a valuable consideration, have met on all the terms of the contract, the contract is complete and enforceable, even though it was intended by the parties to be evidenced by a policy which might not be delivered before the death of the party. But that is where the intention of the parties is to make a contract of insurance by parol. Here it is expressly stated by the parties that this was not to be done. Besides, the minds of the parties must meet before any valid contract can be made.

The appellee testifies positively that he made application for, and expected to get, a policy for $25,000; that no such policy was ever offered him. A part of the consideration for the note was also $1,000 stock in the company, which he never did get. The evidence is not disputed that the stock was to be given, and it is not disputed that the policy was to be delivered within 30 days. There is a dispute about whether the policy was to be for $20,000 or $25,000, and this was a question of fact for the

jury. Then, besides that, one of the instructions given at the request of the appellant was as follows:

"You are instructed that, if you find from the evidence that the insurance policy was issued by the plaintiff company on the life of Mr. Belmont, and that the same was tendered to him by the agent of the plaintiff company, and that the defendant asked the plaintiff's agent to keep the same for him until the note was paid, then you will find for the plaintiff the amount of the note sued upon."

It will be seen from this instruction that the question was submitted to the jury, the very contention made by the appellant in the case, and the jury found against it.

Appellant also asked, and the court gave, the following instruction:

"In determining whether or not there was a delivery of the policy in question, you are instructed that it is the intention of the parties and not the manual possession of the policy which controls, and if you find that an insurance policy was issued in the form applied for and was accepted by the insured, being thereafter treated as in force by the parties, the delivery is complete, though it remain in the hands of the insurer's agent, and if you do find that it was the intention of the parties that the contract should be considered in force, then your verdict should be for the plaintiff."

So, whether it was the intention of the parties to make the contract by parol or not, was submitted fairly to the jury. As we have already said, the application, which was a part of the policy, said that there should be no contract until the policy was delivered. But, notwithstanding this, the court submitted the question to the jury whether there was an intention for it to be in force before delivery, and told the jury that, if this was the intention of the parties, they should find for the plaintiff.

Appellant calls attention to the case of *Jenkins* v. *International Life Ins. Co.*, 149 Ark. 258, 232 S. W. 3. It is true that the court said in that case: "The general

doctrine is that contracts of insurance may be made by parol, and, such being the case, of course delivery of the policy is not essential to the completion of the contract of insurance; and, where the minds of the insured and the insurer for a valuable consideration have met upon all the terms of the contract, the contract is complete and enforceable, even though it was intended by the parties to be evidenced by a policy, but which, because of some fortuity, was not delivered before the death of the insured." The court further said in the same case: "But, of course, the parties may agree, as a condition precedent to a complete and enforceable contract of insurance, not only that there shall be a delivery of the policy, but also a delivery while the insured is in good health."

Numbers of authorities are cited in the above case, and there is no question about the rule in this State. But the record shows that the parties in the instant case agree that there should be no contract of insurance until the policy was delivered.

Appellant also calls attention to the case of *Mutual Life Ins. Co.* v. *Parish,* 66 Ark. 612, 52 S. W. 438. In that case the court said:

"Whether a contract for insurance has been completed depends upon the question whether the respective parties have come to an understanding upon all the elements of the contract—the parties thereto, the subject-matter of insurance, the amount for which it is to be insured, the limits of the risk, including its duration in point of time and extent in point of hazards assumed, the rate of premium, and, generally, upon all the circumstances which are peculiar to the contract and distinguish it from every other, so that nothing remains to be done but to fill up the policy and deliver it on the one hand, and pay the premium on the other."

Some of the issues in this case, about which there is a conflict of evidence, were the terms of the contract. And these questions were submitted to the jury, and its verdict is controlling here.

Appellant next calls attention to Cooley's Brief 442, and to *Ætna Life Ins. Co.* v. *Short,* 124 Ark. 505, 187 S. W. 657, but there is nothing in either of these authorities contrary to the rules above announced.

Another case, and the last one to which appellant calls attention, is the case of *Huntington Ins. Agency* v. *Wyoming County Court,* 98 W. Va. 352, 127 S. E. 64, 41 A. L. R. 642. In that case the court said, among other things:

"Whether an insurance policy has or has not been delivered, after its issuance, so as to complete the contract and give it binding effect, does not depend upon its manual possession by the assured, but rather upon the intention of the parties, as manifested by their acts or agreements. The manual possession of the thing which it is intended to deliver is a matter of little consequence. Such possession may exist without any legal delivery, and it may not exist where a legal delivery has been effected. The controlling question is, not who has the actual possession of the policy, but who has the legal right of possession."

And, as we have already shown, the question of the intention of the parties was submitted to the jury by instructions requested by both parties, and the finding of the jury is conclusive here.

In the notes to the above case, to which attention is called, a number of Arkansas cases are cited.

Appellant argues that the undisputed testimony shows that the contract was completed, and insists that it appears that the company issued the kind of policy applied for, but we do not agree with appellant in the contention that the undisputed proof shows there was a completed contract, nor that the undisputed proof shows that the kind of policy applied for was issued. There is a sharp conflict in the testimony of Belmont and Hollan. Belmont swears very positively that it was not the kind of policy he applied for, and Hollan testified it was. This was one of the issues submitted to the jury. The application and agreement to take a $25,000 policy is not

met by an offer to deliver a $20,000 policy. The minds of the parties must meet on all the essential terms of an insurance contract, just as they are required to meet on the terms of other contracts. And, according to the testimony in this case, there was a dispute as to whether the minds of the parties met.

The court properly instructed the jury, and there is substantial evidence to support the verdict.

The judgment is therefore affirmed.