LANE *v.* SMITH.

Opinion delivered May 13, 1929.

534

*Pace & Davis,* for appellant.

*G. M. Gibson,* for appellee.

MEHAFFY, J. This suit was instituted by appellee against appellant in the Lawrence Chancery Court, to recover for a breach of contract.

It was alleged that on the 9th day of November, 1927, appellee entered into a contract with the appellant to purchase the Lawrence Hotel, together with lots 10, 11 and 12, in block 11, of the city of Walnut Ridge, Arkansas. The hotel was located on said lots. Appellee was to pay $1,000 upon the signing and delivery of the contract as earnest money, and was to pay $9,000 additional when possession was delivered. He was also to execute 80 notes for $500 each, payable monthly. The plaintiff paid the $1,000, and paid a further sum of $1,000 to F. M. Messer, and alleged that this was for the benefit of the appellant. Appellant agreed to furnish an abstract of title showing good and clear title, and pay all taxes due or which should become due between then and January 1, 1928, and the general taxes assessed in 1927, and deliver possession of the property January 1, 1928, or as soon thereafter as could by

due diligence be done, and to make a proper warranty deed.

It was alleged that the plaintiff paid the sums called for, and stood ready to pay the $9,000 upon the furnishing of an abstract and making a deed and delivery of possession.

Appellee alleged that appellant purposely delayed the delivery of the abstract until December 30, 1927, and that, when delivered, it showed numerous defects. It was further alleged that time was of the essence of the contract. Appellee notified appellant on the 2d day of January, 1928, that she had failed to comply with her contract; that said contract had been breached by her; and demanded the return of the $2,000 paid by him, and also $2,500 damages.

The appellant filed answer, denying the material allegations of the complaint.

The contract of sale was as follows:

"This contract for sale, made this 9th day of November, 1927, by and between Mrs. W. R. Lane, party of the first part, and R. H. Smith, party of the second part, witnesseth: That the said party of the first part has this day agreed to sell to the party of the second part the Lawrence Hotel building in Walnut Ridge, Ark., together with lots 10, 11 and 12, in block 11, city of Walnut Ridge, Ark., on which the same is located, and all the furniture and fixtures which belong to the party of the first part and which are now being used in said hotel, this being to except any furniture belonging to the present lessee, upon the following terms and conditions, to-wit: That said party of the second part is to pay to the party of the first part, upon the signing and delivery of this contract, the sum of $1,000 as earnest money to show his good faith in making this contract, and shall pay to the said party of the first part the further sum of $9,000 when possession is delivered to him as hereinafter provided for; and further agrees that he will execute his eighty notes for $500 each, payable one the

first of each month until all are paid, said notes to bear interest from date until paid at the rate of six per cent. per annum, interest to be paid annually on all unpaid notes, and if not so paid, to become as principal and bear the same rate of interest. Provided further, that the said notes shall have written in them an accelerating clause, making all notes due and payable at once when default is made in the payment of any one of said notes.

"The said party of the first part agrees to furnish abstract showing good and clear title to the said property, and to pay all taxes now due or which will become due between now and January 1, 1928, and the general taxes assessed in 1927, and to deliver possession of the same on January 1, 1928, or as soon thereafter as can, by due diligence, be done, and to make proper warranty deed, retaining lien for purchase money.

"The said party of the second part further agrees that he will keep up all repairs on said building and keep all taxes and assessments paid up, and that he will keep the same insured in some reliable company against loss by fire or tornado, for the benefit of the party of the first part, in the sum of at least $35,000, if possible, and any failure of the said party of the second part to comply with these conditions shall forfeit the contract.

"It is agreed that an inventory is to be taken of the furniture and fixtures as soon as can be done after the signing of this contract, and one copy shall be retained by each party.

"Signed in duplicate this day and date first above written.

(Signed) "Mrs. W. R. Lane.
"R. H. Smith."

The appellant took the abstract to Smith's place of business on the 29th of December, but did not find Smith there, and the abstract was not delivered until the 30th day of December, 1927.

On the 2d day of January appellee wrote plaintiff the following letter:

"January 2, 1928.

"Mrs. W. R. Lane,
"Walnut Ridge, Ark.

"*Re* Lawrence Hotel building.

"Dear Mrs. Lane: In the above matter, a contract of sale dated November 9, 1927, relative to Lawrence Hotel property, was executed between yourself and the undersigned, R. H. Smith.

"On November 10, 1927, $1,000 was paid to you by me as earnest money, and I also paid for your account and as additional earnest money and part of the purchase price, in case this contract was consummated, $1,000 to F. M. Messer.

"The fourth paragraph of this contract was as follows: 'The said party of the first part agrees to furnish abstract showing good and clear title to the said property and to pay all taxes now due or which will become due between now and January 1, 1928, and the general taxes assessed in 1927, and to deliver possession of the same on January 1, 1928, or as soon thereafter as can by due diligence be done, and to make proper warranty deed, retaining lien for purchase money.'

"Abstract of title was not furnished me until December 30. I had it examined as soon as possible, and I am now advised by my attorney that same does not show good and clear title to the property in you.

"None of the provisions of the paragraph above quoted nor of this contract have been complied with by you, and the time within which these matters were to be done has elapsed. On this account, this is to advise you that this contract of sale has been breached by you, and that I am no further obligated thereunder in any way, and that you are due to return the $2,000 paid by me as above mentioned. Please return to me the $1,000 which I paid you as earnest money on November 10, 1927, also the $1,000 which I paid to Mr. Messer for your benefit and in connection with this contract, as above mentioned.

"On account of your noncompliance with your contract, I have been to considerable trouble and expense and lost a sum of money totaling approximately $6,000. You may consider this letter a demand for the return of the $2,000 above mentioned, together with interest at the rate of six per cent. per annum from date of payment thereof, and in case this money is returned to me by January 7, I will be willing to waive further damages. In case it is not, however, I shall expect you to return to me the $2,000 and interest, and to respond to me in damages for such sum as I have been damaged by reason of your breach of your contract.

"I am herewith returning to you the abstract of title.

"Yours very truly."

The contract was made on November 9, and the evidence shows that the abstract was completed on December 21, but appellant did not deliver it to appellee until December 30. An effort was made to deliver it on the 29th of December, but Smith was not at home, and his wife refused to receive it.

The attorney who examined the abstract for appellee called attention to the fact that the abstract did not show good and clear title to the property, but at that time did not specify any particular defect. He afterwards wrote a letter, calling attention to numerous defects. All of the defects to which attention was called by the attorney were such defects as could be easily remedied and, in fact, were afterwards corrected. If the abstract had been delivered to appellee on the 21st of December, when it was completed, it is probable that there would have been time then to cure the defects in the title and give possession by the first of January. The abstract, however, not having been delivered to appellee until the 30th of December, it was impossible to have the defects in the title cured by January 1.

The contract provides that possession shall be delivered on January 1, 1928, or as soon thereafter as can, by due diligence, be done. The question to be deter-

mined is, did appellant use due diligence in an effort to deliver possession by the first of January? The contract expressly provides for the delivery of possession to be the first of January, or as soon thereafter as can, by due diligence, be done. Whether or not appellant used due diligence was a question of fact under the circumstances, and we have reached the conclusion that the finding of the chancellor was not against the preponderance of the evidence on this issue.

When one agrees to furnish an abstract showing good title, and an abstract which shows defects is furnished, and attention is called to the defects, the seller would have a reasonable time in which to make the title good. This court said:

"When that defect was called to the attention of appellee, George T. Blair, he at once had that corrected by procuring deeds from the three married women, describing the land correctly by metes and bounds. When this was done, Blair went back to appellant for the purpose of closing the deal, and appellant, according to the testimony, refused to negotiate any further or to complete the purchase. It is evident that appellees were doing all that they could to fully comply with the undertaking to furnish a marketable title, and they did in fact cure all the defects which were specially called to their attention. If the other defects in regard to the description in the other deeds had been insisted upon, appellant would have been in the attitude to demand that those defects be cured, but, instead of doing that, he arbitrarily broke off the negotiations and declined to go further with the trade. Appellees still had the right, and have now the right, under the contract, to perfect the title so as to make it marketable." *Mays* v. *Blair,* 120 Ark. 69, 179 S. W. 331.

The appellant in the instant case, if she had used due diligence, would have had the right to have the defects shown in the title corrected. The contract was made on the 9th of November, and possession was to be

delivered, if it could be done by the exercise of proper diligence, on the first of January, nearly two months. While the contract does not specify when the abstract shall be furnished, it was necessarily understood that it would be furnished a sufficient length of time before the first of January, if it could be done with the exercise of proper diligence, to enable the appellee to examine the abstract, and, if there were any defects, to have them cured, so that possession might be delivered by the first of January. The contract does not provide that possession must be delivered the first of January, but it does provide that it shall be delivered then or as soon thereafter as can be done with diligence. Diligence, used in this connection, evidently means diligence on the part of the appellant in doing whatever is necessary to be done in order that possession may be delivered on the first of January or as soon thereafter as can be done with the exercise of diligence. As we have said, however, the question of whether appellant used diligence was a question of fact, and we cannot say that the finding of the chancellor on this issue was against the preponderance of the evidence. There is nothing to indicate that the abstract might not have been made within 30 days, or less, and it appears that, if proper diligence had been used, it could have been done within this time.

Most of the objections to the title appear to be technical, and all could evidently have been cured in a very few days. Several of the objections are with reference to paying the taxes of the improvement districts, but there was no obligation on the part of appellant to pay either these taxes or the general taxes until the first of January, and the taxes were all paid after the abstract was examined. The parties to the contract knew that the taxes assessed in 1927 had not been paid, because the time to begin payment of taxes was January 1. Appellee knew these taxes had not been paid, and knew that the other taxes had not been paid, and evidently, for that reason, provided in the contract that appellant

should pay them. It is not important, however, to go into the question of the defects in the title pointed out by the attorney, because we have reached the conclusion that appellee was not bound to complete the sale and take the property, since the appellant had not used due diligence to the end that possession might be given him on January 1, and the chancellor properly found against appellant as to the $1,000 paid her by appellee.

We are of the opinion, however, that the court erred in rendering judgment in favor of the appellee for $1,000 paid to Messer.

The appellee testified that he knew Messer represented the appellant, and that he had seen a previous contract between appellant and Messer, and this contract is introduced in evidence. The contract places this property for sale with F. M. Messer for a term of six months, and authorizes him to contract with the purchaser for the sale and conveyance, etc. But it expressly provides that the price, $55,000, is to be net; so, whatever sale was made, the appellant agreed in this contract that she was to have net $55,000.

The contract between appellant and appellee provides that appellee is to pay $1,000 as earnest money to show his good faith, and the further sum of $9,000 when possession is delivered, and that he shall execute his 80 notes for $500 each, payable one the first of each month. This aggregates $50,000. They discussed the payment of the commission to Messer before the contract was signed, and it was suggested that the contract be written for $51,000, but the appellant did not agree to this, and did not agree to pay Messer his commission, and it was expressly agreed that the contract should be written for $50,000, and that the appellee should pay Messer's commission. Whatever conversation was had prior to the signing of the contract was merged in the written contract, and parol evidence was not admissible to vary or contradict the terms of said contract, and the written contract fixes the purchase price at $50,000.

"Prior oral agreements and antecedent writings forming a part of negotiations for a contract become merged in the subsequent written contract, and are incompetent as evidence for the purpose of enlarging the scope of such written contract." *Harrower* v. *Ins. Co. of N. America,* 144 Ark. 279, 222 S. W. 39; *Doniphan K. & S. Rd. Co.* v. *Missouri & N. A. Rd. Co.,* 104 Ark. 475, 149 S. W. 60; *American Southern Trust Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50.

But, even if oral testimony was admissible to vary or contradict the terms of the written contract, the evidence in this case, we think, shows conclusively that the appellant did not agree to pay any commissions to Messer. On the contrary, she stated very positively that she would not pay any commissions, and, for that reason, the purchase price was fixed in the written contract at $50,000, and this was $50,000 net to her.

If an agent agrees to sell property for an owner at a certain price net to the owner, and sells at that price, the owner, of course, would not owe him any commission. Under the evidence in this case, Messer did not at any time have any claim against the appellant for commission, because she stated and he admitted that she was not to pay any commission, and that he was to get his commission out of Smith. She stated that they tried to get her to sign the note to Messer for the deferred payment, and she refused to do this. She also testified that she was to get $50,000 net; Smith was to pay the commission, and she was ready and willing at all times to carry out her part of the contract.

Messer testified, exhibiting his card, to which we have already called attention, showing that he was authorized to sell the property for $55,000 net to appellant; that the price was first $55,000, and that the price in the contract of sale with Smith was finally written as $50,000. He testified that the price agreed on at first was $51,000, and that Mrs. Lane did not want to place herself in a position to have to pay commission. She

wanted the net price of $50,000, and Messer agreed, according to his testimony, to this, and stated it did not make any difference to him, and that he then agreed that if Mr. Smith would pay the commission it would be all right.

The purchaser of property can employ a broker to buy just as a seller can employ one to sell, and may become liable for commissions. Certainly he could not recover commissions against the owner when she was stating all the time that she would not pay it, and he agreed to changing the contract so that she would not have to pay it, and Smith agreed to pay it.

We think the overwhelming weight of the testimony shows that the appellant was not pay the commission, and we also think that the written contract, made after their conversations with reference to the commissions, clearly shows that she was not liable for the $1,000 paid to Messer.

It follows therefore that the court erred in rendering a decree in appellee's favor against appellant for the sum of $1,000 paid to Messer, and in this respect the decree will be reversed, and appellee's cause of action dismissed. In other respects the decree of the chancellor was correct, and it is affirmed.