**E. D. McKNIGHT, Plaintiff,**

v.

**NATIONAL SURETY CORPORATION,**
a Corporation, Defendant.

**Civ. No. 609.**

United States District Court
E. D. Arkansas, E. D.
March 13, 1958.

Shaver & Shaver, Wynne, Ark., for plaintiff.

Daggett & Daggett, John L. Daggett, Marianna, Ark., for defendant.

LEMLEY, District Judge.

This is an action brought by E. D. Mc-Knight, a citizen of Cross County, Arkansas, against the defendant, National Surety Corporation, a New York insurance company, to recover the sum of $10,000 expended by him in satisfaction of a judgment rendered against him in the Circuit Court of Cross County in a death action brought against him by the administrator of the estate of Clifton C. Lawson, deceased, plus the sum of $2,500 paid by him as an attorney's fee in connection with the defense of that action, together with a statutory penalty of 12% and a reasonable attorney's fee in this action, as provided by Ark.Stats., 1947, Section 66–514. It is the theory of the plaintiff that the defendant is liable for these sums on account of a contract of liability insurance entered into between him and the defendant, the latter acting through its agent, H. L. Coldren, Jr., of Parkin, Arkansas, shortly prior to October 7, 1953, which contract was later incorporated into a written policy issued by the defendant and delivered to and accepted by the plaintiff.

The accident that has been mentioned took place on November 9, 1953 and involved a Massey-Harris farm tractor owned by the plaintiff and operated at the time by one of his employees. Said

tractor was not covered by or included in the policy that was issued and delivered to the plaintiff, but the latter takes the position that under the original agreement between him and Mr. Coldren

that vehicle was in fact covered by the policy at the time of the accident, and he now seeks to have the policy reformed so as to express what he contends was the true agreement of the parties.[1] This

I. In his amended complaint the plaintiff advanced two theories of recovery, namely: (A) That there was an oral contract of insurance or for the issuance of a policy of insurance which would have afforded coverage with respect to the Massey-Harris tractor, and that he was entitled to recover on that contract; that theory was essentially legal in nature, and the plaintiff demanded a trial by jury. (B) That in the alternative the plaintiff was entitled to reformation of the written contract so as to afford him such coverage; that claim for relief, which is the subject of this memorandum, is equitable in nature and is addressed to the Court sitting without a jury.

On August 3, 1957, the defendant filed a motion for partial summary judgment directed at the plaintiff's first theory above outlined on the ground that the parol evidence rule would prevent the plaintiff from introducing any proof to establish the alleged oral agreement which was the basis of his theory, and that if the case should be tried to the jury on that theory, we would be compelled to direct a verdict for the defendant, which motion was granted on August 15, 1957. In a letter opinion addressed to counsel on both sides, with which opinion our order was accompanied, we said: "Assuming for purposes of argument that Mr. McKnight is correct in his version of what was agreed upon between the parties in the course of their negotiations, it is a well settled principle of Arkansas law, applicable to insurance contracts as well as to contracts of other types, that all prior and contemporaneous oral negotiations and agreements become merged in a subsequent written agreement, and that evidence of such oral negotiations and agreements are not admissible to vary or extend the terms of the written instrument. Robinson v. Insurance Co., 51 Ark. 441 [11 S.W. 686, 4 L.R.A. 251]; Germania Insurance Co. v. Bromwell, 62 Ark. 43 [34 S.W. 83]; Graves v. Bodcaw Lumber Co., 129 Ark. 354 [196 S.W. 800]; Harrower v. Insurance Co. of North America, 144 Ark. 279 [222 S.W. 39]; Shamis v. Rice-Stix Dry Goods Co., 155 Ark. 352 [244 S.W. 340]; American Southern Trust Co. v. McKee, 173 Ark. 147 [293 S.W. 50]; Galion Iron Works and Mfg. Co. v. Otto V. Martin

Construction Co., 176 Ark. 448 [3 S.W. 2d 310]; Pyramid Life Insurance Co. v. Belmont, 177 Ark. 564 [7 S.W.2d 32]; Brunswick-Balke-Collender Co. v. Culberson, 178 Ark. 957 [12 S.W.2d 903]; Lane v. Smith, 179 Ark. 533 [17 S.W.2d 319]; Metropolitan Life Insurance Co. v. Minton, 188 Ark. 456 [66 S.W.2d 627]; Coleman v. Volentine, 211 Ark. 594 [201 S.W.2d 592], and Stevens v. Owen, 220 Ark. 196 [246 S.W.2d 728]. Hence, should the plaintiff go to trial on his oral contract theory, he would not be permitted to introduce his evidence thereof, and a directed verdict in favor of the defendant would be required as far as that theory is concerned. Such being the case, partial summary judgment is proper, particularly in view of the fact that plaintiff's alternative prayer for reformation is equitable in its nature, and is to be determined by the Court without a jury."

In that opinion we had occasion to distinguish American Casualty Co. of Reading, Pa. v. Rightor, 212 Ark. 779, 207 S.W.2d 736, which the plaintiff had cited, and in which the Supreme Court of Arkansas had permitted what was in effect a reformation of a written insurance policy in an action at law; in making the distinction we pointed out that there the facts were practically undisputed, that no question of the parol evidence rule appeared to have been raised, and that the case had been tried without a jury. We stated: "Under the testimony in that case, the plaintiff was clearly entitled to reformation, and since the case was tried without a jury, it made no practical difference whether the relief was granted by a chancellor or by a circuit judge. In the instant case, however, the facts are in dispute, a jury has been demanded by the plaintiff, and the defendant is strenuously insisting upon the parol evidence rule. Had that situation been before the Court in the Rightor case, I am satisfied that it would have adhered to the rule so often enunciated and applied by it that prior negotiations are merged in a subsequent written instrument, and would have held that the plaintiffs' remedy there was by way of reformation in equity."

We also distinguished from the instant case Helms v. Carolina Casualty Insurance Co., which we had tried at Texarkana some months before, saying in that

memorandum incorporates our findings of fact and conclusions of law on the issue of reformation, which issue was submitted upon the oral testimony of the plaintiff, a copy of the policy in suit, including endorsements thereon and attachments thereto, and the discovery depositions of the plaintiff, of Mr. Coldren, and of Mr. Louis A. Schmitt, the manager of the defendant's branch office in Memphis, Tennessee, which depositions were introduced in evidence by agreement.[2]

The evidence disclosed that the plaintiff is a large farmer in Cross County, Arkansas, who in 1953 was operating five farms, aggregating about 6,000 acres of land, one of which farms was known as the "Albro Farm." In the course of his operations the plaintiff utilized quite a number of motor vehicles, including passenger cars, trucks, busses and farm tractors. The tractors were twenty in number, and some of them were customarily used for hauling agricultural products in trailers on the public highways, while others were confined in their operations to the plaintiff's fields and were not used on the roads.

During 1952 and 1953 the defendant's insurance business in Cross County was handled by Mr. Coldren, above referred to, and he had been writing the plaintiff's liability insurance for a number of years, placing it with the defendant during at least the two years just mentioned. None of the plaintiff's tractors were covered by the liability policy issued by the defendant which expired on October 6, 1953, and when Mr. Coldren approached the plaintiff with regard to a renewal of that policy, he called the latter's attention to the desirability of having liability coverage on his tractors.

According to the testimony of both Mr. McKnight and Mr. Coldren, the former stated that he did not desire to cover all of his tractors, but only those that would be used on the road, and he designated one tractor for each of his five farms for such coverage, the tractor designated for the Albro Farm being a John Deere Model "G." The new policy, covering the period from October 7, 1953 to October 7, 1954, was prepared in the defendant's Memphis office, was mailed to Mr. Coldren, and was by him delivered to the plaintiff who accepted it. The schedule of vehicles covered by the policy describes twenty-four motor vehicles, including the John Deere Model "G" farm tractor above mentioned and four other farm tractors. It did not include the Massey-Harris tractor involved in the accident, and there is no other provision in the policy which would extend the coverage thereof to that particular tractor.

In the late afternoon of November 9, 1953, the plaintiff's farm manager on the Albro Farm had a trailer load of grain that he desired to have hauled to a grainery several miles away, the haul involving the use of a public highway. The John Deere Model "G" tractor which would normally have made this haul was at the time attached to another vehicle and for some reason could not be immediately detached therefrom; under those circumstances the farm manager directed one of the plaintiff's farm employees to make the haul by means of the Massey-Harris tractor, and it was in the

connection: "This case is quite different from Helms v. Carolina Casualty Insurance Co. which I tried at Texarkana some months back. There the written policy did not conform to the oral agreement, but the policy was not delivered to the insured prior to the happening of the accident involved in the case, and in fact was never delivered at all, and I held that the parol evidence rule was inapplicable. Such, however, is not the situation here." Subsequently, our decision in the Helms case was affirmed by the Court of Appeals on the same basis that we had decided it. Carolina Casualty Insurance Co. v. Helms, 8 Cir., 248 F.2d 268.

2. At the commencement of the trial it was agreed that the issue of reformation was the only issue remaining to be determined, and it was specifically agreed that the $2,500 paid by the plaintiff to his attorney in the State court litigation was a reasonable fee.

course of the trip that the accident occurred. The Massey-Harris tractor was a large rice-field tractor, was not normally used for the hauling of products on the highways, and, as a matter of fact, as testified to by Mr. McKnight with commendable candor, that as far as he knew this particular trip was the only mission of its kind on which said tractor had ever been employed.

After the accident the tractor was apparently removed from the scene because the plaintiff and representatives of the defendant thought at first that the tractor that had been involved was the John Deere tractor included in the policy; the next morning, however, the plaintiff discovered the true facts and immediately notified the defendant's investigators. Upon getting this information the defendant notified the plaintiff that the Massey-Harris tractor was not covered by the policy, and that it took the position that it was not under any obligation to defend any suit that might arise from the accident or to pay any judgment that might be rendered therein. Subsequently, the plaintiff had Mr. Coldren expand his coverage so as to specifically include all of his farm tractors, that additional coverage being likewise placed with the defendant company.

In support of his claim for reformation Mr. McKnight testified, both in his deposition and orally, that it was his understanding of the agreement between him and Mr. Coldren that while the five tractors named in the schedule attached to the policy would be the tractors normally used on the highways, nevertheless he would be covered with respect to any tractor being so used if, at the time, it was the only tractor on the road from the particular farm from which it came. In other words, it is his theory that he had a right to substitute other tractors for the ones described in the policy so long as he did not have at any one time more than one tractor on the highways from each of his five farms.

On the other hand, Mr. Coldren testified definitely that it was his understanding that the tractors described in the policy were the tractors to be used on the highways and that no other tractors were to be covered, and that no right of substitution existed. Mr. Coldren also testified that he had told Mr. McKnight that if he wanted complete coverage he should list all of his tractors, but that, as he recalls, Mr. McKnight told him that he was going to designate a tractor from each farm "and that the big rice field tractors would have no business on the highway, and he saw no reason to cover them," and that it was his understanding that those tractors, which would include the Massey-Harris vehicle, "would be kept in the field and not on the highway." Moreover, Mr. Schmitt, the defendant's branch manager at Memphis, deposed: "With respect to this particular policy, the insured elected to insure only five of his farm tractors. Under such circumstances, the company is not willing to provide coverage for substituted farm tractors or newly acquired farm tractors."

▮▮ There is no question that under Arkansas law an insurance policy can be reformed where it does not reflect the true intentions and agreements of the parties; but the evidence to justify such reformation must be clear, cogent and convincing, and, further, the party seeking reformation is required to show that the contract's failure to express the true agreement results from a mutual mistake of both parties, or from a unilateral mistake of one party, accompanied by fraud or unconscionable conduct on the part of the other. Phoenix Assurance Co. of London v. Boyette, 77 Ark. 41, 90 S.W. 284; American Alliance Insurance Co. v. Paul, 173 Ark. 960, 294 S.W. 58; Barton-Mansfield Co. v. Wells, 183 Ark. 174, 35 S.W.2d 337. Since there is no suggestion here of any fraud or unconscionable conduct on the part of Mr. Coldren or any other representative of the defendant,[3] the plaintiff, in order

3. While Mr. Coldren does not now number the defendant among the companies whom he represents, he is still handling Mr. McKnight's insurance.

to prevail, must rely upon and establish a mutual mistake by evidence of the requisite character. This, in our estimation, he has failed to do, and, on the other hand, we find from a preponderance of the evidence that there was no mutual mistake, and that the policy, as written, expresses the understanding of the defendant and its agents; hence, there can be no reformation.

In that connection, while, as stated, Mr. McKnight was fair and candid in his testimony, we were also impressed by Mr. Coldren's candor, and it is to be remembered that he has no interest in the case whatever as he does not now even represent the defendant as an agent. As pointed out, he testified that it was his understanding that the tractors listed were the only ones covered, and that he called Mr. McKnight's attention to the fact that if he wanted complete coverage he should list all of his tractors, but the latter elected not to do so; and, according to Mr. Schmitt, in view of that election the company was not willing to permit substitution of vehicles or to cover newly acquired vehicles. The policy, as drawn, reflects the understanding of the defendant's representatives and not that of the plaintiff.

Counsel has called to our attention American Casualty Co. v. Callaway, 75 Ga.App. 799, 44 S.E.2d 400; we have examined that decision and have found it not to be in point. In that case the Court recognized and applied the rule that is as well established in Arkansas as in Georgia to the effect that if an insurance policy is ambiguous, it will be construed most strongly against the insurer, and also referred to a Georgia statute, Code, § 20–703, which provides that if the intentions of the parties to a contract differ, then the meaning placed upon it by one party and known to the other at the time will be adopted. Here, however, we have no question of an ambiguous policy, susceptible of two different constructions, because under no construction of the policy in suit can the Massey-Harris tractor be considered as covered thereby. As to the Georgia statute, assuming without deciding that it announces a principle of law that would be recognized in Arkansas, there is no evidence here that Mr. Coldren or Mr. Schmitt knew or had any reason to believe that Mr. McKnight had any understanding of the agreement differing from their own.

It is, of course, regrettable that due to a fortuitous circumstance the John Deere Model "G" tractor was not available to make the haul which resulted in the accident, and that the plaintiff must bear the resultant serious loss. But courts cannot make contracts for the parties, and cannot reform them unless the legal prerequisites for reformation have been met, which has not been done here.

The order that we entered on August 15, 1957, dismissed so much of the complaint as sought a recovery upon an alleged oral contract, and an order will now be entered dismissing the remaining portion of the complaint whereby the plaintiff seeks reformation, which will finally dispose of the case.