METROPOLITAN LIFE INSURANCE COMPANY *v.* MINTON.

4-3243

Opinion delivered December 18, 1933.

*Daily & Woods,* for appellant.

*Holland & Holland,* for appellee.

Smith, J. Tom Minton, the plaintiff below, sued the Metropolitan Life Insurance Company, appellant herein, to recover $1,000, alleged to be due him on account of total and permanent disability, resulting from an injury which he received while employed by, and working for, the R. A. Young & Sons Coal Company at Jenny Lind, Arkansas. The insurance company issued a group insurance policy to the coal company, which received what is called the master policy, and each employee taking the insurance received a certificate or policy of insurance referring to the master policy. These certificates or policies issued to the employees all contained the following provision: "Under the terms of the group policy mentioned on page 1 of this certificate, any employee shall be considered totally and permanently disabled who furnishes due proof to the company that, while insured thereunder, and prior to his 60th birthday, he has become so disabled, as a result of bodily injury or disease, as to be prevented permanently from engaging in any occupation and performing any work for compensation or profit."

These certificates contained a recital of the number and amount of the installments of benefits to be paid in case of disability, the amount of the installments being

dependent on the amount of insurance taken by the respective employees. The certificate contained a table showing the number and amount of these payments of disability benefits.

There were two disputed questions of fact in the case. The first was whether the plaintiff had become totally and permanently disabled. The second was whether the plaintiff, being more than sixty years of age at the time of the issuance of the certificate, was entitled to the disability benefits. Upon this last-named issue of fact, the testimony shows, without dispute, that the plaintiff was then sixty-five years of age, that fact being stated in his application for the insurance. Plaintiff's testimony shows, however, that the agent of the insurance company, who was sent to the mine by the company to install the insurance, and to explain the plan of its operation, represented to the plaintiff that his age would not prevent him from receiving the disability benefits in case of injury. We do not review the testimony upon either of these issues, as it suffices to say that they are concluded by the verdict of the jury in plaintiff's favor, the testimony being legally sufficient to support that finding. From the judgment rendered upon this verdict is this appeal.

The plan of the insurance was to the following effect: Each employee received the amount of life insurance for which he applied. The plaintiff applied for, and received, a life insurance certificate for a thousand dollars, payable to his wife at his death. This certificate contained the clause as to disability set out above. All employees paid the same rate per thousand for their insurance, which appears to have cost the employees eighty cents per month per thousand. The balance of the premium was paid by the coal company. Employees over sixty years of age paid the same rate for their life insurance as was paid by employees under that age, but the latter had the compensating advantage of the disability coverage. However, we must assume, in view of the verdict of the jury, that it was represented to plaintiff by the company's agent that he, too, would have the advantage of the disability coverage, notwithstanding his age.

Upon the issue stated, the court charged the jury as follows: ''2. If you find from the evidence that Minton was more than 60 years of age at the time the application for the insurance was made, and that this fact was disclosed by him, and that the Metropolitan Life Insurance Company thereafter, with knowledge that he was more than 60 years of age, issued him the policy containing the provisions relating to total and permanent disability, then, in that event, you are instructed that the insurance company waived the 60-year age limitation, and Minton would be entitled to recover, provided you should also find that he is totally and permanently disabled as defined to you in other instructions.''

The instruction presents the exact issue decided by the Supreme Court of Tennessee in the case of *McLain* v. *American Glanzstoff Corporation*, 166 Tenn. 1, 57 S. W. (2d) 554. The plaintiff in that case had a group insurance certificate containing identical provisions in regard to life and disability insurance as the one here sued on. In holding that the employee could not recover the disability benefits on account of his age, the Supreme Court of Tennessee said: ''If the policy had insured against total disability alone, and the insurer knew that complainant was 61 years old at the time the contract was written, the insurer, under this rule, would be estopped to rely on a provision of the policy excepting from total disability benefits any insured over 60 years of age. Here, however, the contract of insurance covers the life of the insured for the benefit of his wife, is a valid contract in that respect, not void from its inception. The contract merely excludes from its total disability benefits employees over 60 years of age.''

It is true, the opinion in the Tennessee case recites that no fraud or misrepresentation was alleged; but it will be observed that the instruction above quoted did not require that finding before a recovery on the certificate here sued on could be had. The instruction does require a finding that the plaintiff had disclosed his true age to the insurer, but that knowledge would not alter the case. Nor would the terms of the certificate be altered, even though the jury had been required to find,

and had found, that the insurer's agent had represented that effect would not be given to the plain and unambiguous language of the certificate, excluding a person over sixty years of age from the disability benefits.

The general rule appears to be that, where the insurer has knowledge, at the time of issuing a policy of insurance, of existing facts which, if insisted on, would invalidate the contract of insurance from its inception and render it void, such knowledge constitutes a waiver of the condition in the contract inconsistent with these known facts, and the insurer is estopped thereafter from asserting that these facts constituted a breach of the contract. The theory of the law upon which such decisions are based is that, in the absence of a showing to the contrary, it will be presumed that the insurer intended to execute a valid contract in return for the premium received; and, when the policy contains a condition which, if enforced, renders it void from its inception, and the insurer knows that such will be its result, the law presumes that the insurer intended to waive the condition, thereby executing a binding contract, rather than to have deceived the insured into the belief that he had insurance, when, in fact, he had none. It is not to be presumed that the insurer will accept, or has accepted, the premium on an insurance contract knowing at the time it will not perform the contract when called upon to do so, because of the existence of facts of which it had knowledge before issuing the policy. The law is so declared at § 346 of the Chapter on Insurance in 14 R. C. L., at page 1166. This court has decided numerous cases to that effect, and we do not mean by this opinion to say anything impairing their authority. Here, however, the insurer does not claim the policy was void from its inception, or void at all. It concedes the validity of the certificate as a life insurance contract, and merely contends that the doctrines of waiver or estoppel cannot be invoked to alter a valid and unambiguous contract.

Now, of course, the rule is well settled that all doubtful or ambiguous provisions of an insurance contract are to be resolved against the insurer, and in favor of the insured. This is true, as many cases have explained,

because the insurer has carefully chosen the language with which it expresses or limits its liability, but, in other respects, these contracts are construed as other written contracts would be, and the rule against varying written contracts by parol evidence applies to insurance contracts, as well as to other contracts which have been reduced to writing.

At volume 8 of Cyclopedia of Insurance Law (Couch), § 2182, page 7052, it is said: "No rule of evidence is better settled than that, in the absence of fraud or error, parol evidence is inadmissible to vary or control the plain and unambiguous terms of a complete written contract of insurance, or to aid in its interpretation, unless the contract is incomplete in itself, or is ambiguous, either as to construction or application of the terms, or the subject, since when a policy of insurance, properly executed, is delivered and accepted, it must be conclusively presumed to contain all the terms of the agreement for insurance by which the parties intended to be bound, and, therefore, to be the final form of their binding agreement."

Among the cases cited in support of the text just quoted is our own case of *Harrower* v. *Insurance Co. of N. Am.*, 144 Ark. 279, 222 S. W. 39.

A case involving the principle which is decisive of the instant case is that of *Wheeler* v. *Fidelity & Casualty Co. of New York*, 129 Ga. 237, 58 S. E. 709. That case was a suit upon an accident policy, which insured against the injury while insured was "riding as a passenger in, or on, a public conveyance propelled by steam, electricity, compressed air or cable, and provided for passenger service, including a passenger elevator." The conductor of a passing street car had an altercation with a passenger, at whom he shot, and the bullet struck the insured "while she was going up the front steps of her home on the street along which the car was passing." It was alleged in the complaint—to which a demurrer was sustained—that the agent of the insurer represented, at the time the policy was sold, that the insured would be indemnified in the sum named in the policy in the event she should die as the result of an external, violent or accidental means,

whether received on a car or otherwise. In sustaining the demurrer to this complaint, the Supreme Court of Georgia said: "While we recognize the rule that a policy of insurance must be construed most strongly against the insurer, still the words of the policy must be given the meaning which they ordinarily bear; and, where it is manifest that it was the intention of the insurer that liability should attach only in given circumstances, the law will uphold the contract according to its true intent and import. We do not think there is any ambiguity whatever in the clause of the policy providing for indemnity resulting from death or disability of the beneficiary. Nor do we think there is any stipulation in the policy which can be properly held to vary or alter the plain and evident meaning of the terms in this clause. The writing being unambiguous, parol evidence as to what was said by the parties at the time it was executed will not be admitted to vary or alter the terms of the writing. The petition set forth no cause of action, and was properly dismissed on demurrer." See also Kelsey v. Continental Casualty Co., 108 N. W. 221.

We conclude therefore that, while parol evidence may be received to show, by way of waiver or estoppel, that a contract for insurance, or for any other purpose, was not void from its inception, such testimony is not admissible to vary the terms of an unambiguous written contract. As was said by the Supreme Court of Tennessee in the McLain case, supra, if the policy had insured against disability only, parol evidence would have been admissible to estop the insurer from asserting that the policy was void when written. But parol evidence is not admissible to show that plaintiff had, not life insurance merely, as he had without dispute, but that he had disability insurance also, when the unambiguous language of the certificate or policy plainly provides to the contrary.

The judgment must therefore be reversed, and, as the cause appears to have been fully developed, it will be dismissed.

HUMPHREYS, J., dissents.