**CARTER v. THORNTON et al.***

No. 10840.

Circuit Court of Appeals, Eighth Circuit.

Jan. 10, 1938.

Clinton R. Barry, of Fort Smith, Ark. (Geo. T. Arnett, of Idabel, Okl., on the brief), for appellant.

Joseph M. Hill, of Fort Smith, Ark. (Henry L. Fitzhugh and John Brizzolara, both of Fort Smith, Ark., on the brief), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The Metropolitan Life Insurance Company paid into court the sum of $2,500, the amount of a policy of life insurance issued by it upon the life of Van R. Carter, deceased, and interpleaded John T. Thornton, appellee, and Wilma I. Carter, appellant, as conflicting claimants to the fund. Both defendants answered claiming title. The case was tried to the court and a decree was entered awarding the fund to Thornton, and Carter appeals.

In January, 1935, the firm of Thornton & Carter was organized, the partners being the appellee John T. Thornton and Van R. Carter, the insured. The partnership business consisted of the operation of a retail store at Stigler, Okl., Thornton furnishing the credit and keeping the books while Carter attended to the selling. By similar arrangements Thornton also owned a half interest in ten other stores in Arkansas and Oklahoma, associating with him a different partner in each store.

In 1930, Thornton took out a policy of group insurance with the Metropolitan Life Insurance Company for his partners, and on April 1, 1935, a certificate of insurance under the policy was issued to Van R. Carter in the amount of $2,500. The premiums were paid by Carter. His wife, Wilma I. Carter, appellant here, was named beneficiary.

Thornton's claim to the proceeds of the policy is based upon an instrument signed by Carter on August 6, 1935, which reads:

"August 6, 1935.

"This is to certify that I, Van R. Carter, insured with the Metropolitan Life Insurance Company in the Group Department #5884-G, Serial #98, for Twenty-Five Hundred Dollars, my present beneficiary being my wife Wilma I. Carter, both of Stigler, Oklahoma. I am assigning this policy or certificate of Group Insurance to Thornton & Carter as beneficiary that in

*Rehearing denied Feb. 1, 1938.

the event of my death the proceeds of this contract will go to Thornton & Carter, or whatever amount of the contract is needed to satisfy any obligation that may be at that time outstanding.

"Signed: Van R. Carter."

Thornton's testimony is that, business conditions being bad, Carter desired to drop his insurance to save expenses. Thornton then went to L. N. McAfee, the district agent for the Metropolitan Life Insurance Company, who had written the policy, to ascertain how the insurance could be saved for the benefit of the firm, and McAfee thereupon drafted the above instrument signed by Carter. The understanding was, according to Thornton, that the firm would pay the premiums until business improved; then the writing which Carter had signed would be destroyed, and the policy would continue as it had first been taken out.

Van R. Carter died February 16, 1936. Thornton submitted proof of death to the insurance company, but did not send in the instrument which had been signed by Carter and left with Thornton on August 6. Thereupon the company sent him a check payable to Mrs. Carter for $2,500. Thornton delivered the check to McAfee, who wrote to the home office of the company returning the check and also inclosing the agreement of August 6, and requesting that a new check "be drawn jointly to the order of John T. Thornton Company and Wilma Ione Carter."

The insurance company did not comply with the request contained in McAfee's letter. Thereupon, under date of March 19, 1936, Thornton wrote the company as follows:

"Metropolitan Life Insurance Company
"New York City
"Gentlemen:
    "Re Policy—Van R. Carter, Deceased.
            (Insurance Claim)
    "I have wired you this date as follows:
    " 'Group Policy Fifty-eight Eighty-four G John T. Thornton Company Certificate Ninety-eight Van R. Carter Assigned August Sixth Nineteen Thirty-Five To Thornton And Carter Stop As Surviving Partner Thornton And Carter I Hereby Demand Payment Pursuant Said Assignment Of Said Certificate Twenty-Five Hundred Dollars Stop Letter Follows'
    "Under date of March 12, 1936, Mr. L. N. McAfee, your local manager, forwarded you the original assignment referred to in the above telegram. With this transmitting letter he returned your check for $2500.00 which was payable to the beneficiary, Wilma Ione Carter. The premiums on this certificate were paid by the partnership, and the certificate was being carried for the benefit of the partnership. I am advised that, as surviving partner of the firm of Thornton & Carter, I am entitled to this money for the purpose of winding up the partnership affairs. The beneficiary, Wilma Ione Carter, is asserting an adverse claim.

    "You are hereby notified not to pay this amount to Mrs. Carter except at your own peril.
        "Yours very truly,
                "John T. Thornton.
"JTT:B
"By Registered Mail."

The company continuing in its refusal to comply with his demand, on or about April 1, 1936, Thornton instituted a suit in the state court to recover the entire amount of the policy. The company then commenced this suit by filing a bill of interpleader, naming appellant, Wilma I. Carter, and appellee John T. Thornton as the adverse claimants.

The pertinent sections of the policy were these:

"Section 6. Agents. No agent is authorized to waive forfeitures to alter or amend this policy, to accept premiums in arrears or to extend the due date of any premium. * * *

"Section 8. Chance (change) of beneficiary. Any employee insured hereunder may, from time to time, change the beneficiary by filing written notice thereof with the company accompanied by the certificate and certificate riders—if any—of such employee. Such change shall take effect upon endorsement thereof by the company on such certificate and certificate riders—if any—and unless the certificate and all certificate riders—if any—are so endorsed, the change shall not take effect. After such endorsement, the change shall relate back and take effect as of the date the employee signed said written notice of change, whether or not the employee be living at the time of such endorsement or not, but without prejudice to the company on account of any payment made by it before receipt of such written notice. * * *

"Section 9. Assignment. The Employee's Certificate and Certificate Riders

—if any—and the insurance provided hereunder are non-assignable."

The certificate issued to Van R. Carter provided: "The Insurance Herein Set Forth Is Non-Assignable." The certificate also contained a space for register of change of beneficiary.

After the death of Carter, Thornton caused the firm assets to be inventoried and it was ascertained that liabilities exceeded assets to the extent of $640. The assets were later sold by Thornton to the firm's principal creditor for a price which left a net deficit of $2,900.03.

The District Court concluded that the instrument signed on August 6 had effectuated a change of beneficiary, and that the obligations of the firm approximated $3,000. A decree was entered in favor of Thornton awarding him the entire amount of $2,500 and judgment for costs and attorney's fees payable out of the fund deposited in court by the insurance company.

The sole question to be decided on this appeal is whether the document signed on August 6 shall be deemed effective as a change of beneficiary. This writing must necessarily be looked upon as a nontechnical layman's draft, in view of its anomalous phraseology, "I am assigning this policy * * * to Thornton and Carter as beneficiary." Writers on the law of insurance point out a clear distinction between assignment and change of beneficiary. Assignment is said to be the transfer of one's own rights or interest in the policy resting upon contract, while the right to change the beneficiary is the power to appoint, which must be exercised in the manner specified in the contract. Cooley's Briefs on Ins., 2d Ed., p. 6443; Joyce on Ins., 2d Ed., § 2327a; Reid v. Durboraw, 4 Cir., 272 F. 99.

The instrument contained on its face a number of significant features. In the first place, it was not addressed to the company, nor disclosed to it until after the company had forwarded a check made out to Mrs. Carter after the death of insured. The face of the instrument discloses that it was the transfer of a security interest only—which is typically the function of an assignment and rarely, if ever, the function of a change of beneficiary. The transfer was intended to be contingent, not to be consummated by notice to the company except in the unanticipated event that Carter should die before business conditions improved. The amount of the interest sought to be conveyed was not the full face of the policy, which goes with a change of beneficiary, but was a determinable amount depending upon "whatever amount is needed." Moreover, the scheme contemplated that the transfer would be revocable, that the status quo might be restored without executing any retransfer. In view of all of these elements which appear upon the face of the document and the admissions of Thornton, it is clear that the writing of August 6 was the memorandum of a contract entered into between Carter and Thornton, and not a notice to the company of the exercise by Carter of the power of appointment granted to him by the policy. The instrument executed by Carter cannot, therefore, be construed as a change of beneficiary. The tenor of the instrument was to convey a security interest in the policy to the firm without any change of beneficiary.

Further, it is clear that prior to the commencement of litigation Thornton understood that the contract of August 6th was an assignment and not a change of beneficiary. In his telegram and letter to the insurance company on March 19, 1936, he said, "Van R. Carter Assigned * * * to Thornton and Carter, * * * I Hereby Demand Payment Pursuant Said Assignment Of Said Certificate Twenty-Five Hundred Dollars, * * * Under date of March 12, 1936, Mr. L. N. McAfee * * * forwarded you the original Assignment referred to in the above telegram." Thornton's contention at the trial supported by the testimony of McAfee is apparently therefore an afterthought, conceived perhaps conscientiously, but dictated by personal interest when the death of the insured and the refusal of the insurance company to recognize the firm of Thornton & Carter as assignee brought to his attention the contractual relations of all the parties.

Appellee cites Royal Union Ins. Co. v. Lloyd, 8 Cir., 254 F. 407, and a number of other cases to the effect that when a policyholder attempts to change his beneficiary, but fails to comply with all of the technical requirements specified in the policy for making such a change, the attempted change will nevertheless be given effect. In view of the construction placed upon the conduct of the insured in this case, those authorities are not in point. Van R. Carter, instead of trying to change the

beneficiary, tried to accomplish the desired result by other means.

Appellee makes no contention that the attempted transfer in favor of the partnership may be sustained as an assignment. Both the master policy and Carter's certificate provided that Carter's interest in the policy should be nonassignable. Although it is sometimes true that an attempted assignment of a "non-assignable" chose in action may be specifically enforced between the parties on grounds of estoppel, it does not follow that an agreement between Carter and Thornton in violation of the terms of the policy would have the effect of altering the legal relation existing between the insurance company and Mrs. Carter. Cf. Schoenholz v. New York Life Ins. Co., 234 N.Y. 24, 136 N.E. 227; Johnson v. New York Life Ins. Co., 56 Colo. 178, 138 P. 414, L.R.A.1916A, 868, with note at page 877.

This is an entirely different situation from that presented in such cases as Rawls v. Penn Mutual Life Ins. Co., 5 Cir., 253 F. 725, in which the beneficiary's interest was cut off as a result of a transaction between the insured and the company.

█ The opinion of the District Court in this case adopted the view that by reason of the fact that the district agent McAfee drafted the instrument signed on August 6 and told Thornton that it would be effective to change the beneficiary, the insurance company became a party to the transaction between Carter and Thornton. But, assuming that the prohibition against assignment might be stricken from the policy by an agreement between the insured and the insurer, it does not appear that McAfee had any authority to make such an agreement on behalf of the company. No specific finding of fact was made by the District Court on the question of agency. The only evidence on that question is the testimony of McAfee himself. He testified that he had "merely an insurance writing agency." His duty to "service contracts," he said, meant "that I advise persons who have policies." Section 6 of the master policy reads: "No agent is authorized to waive forfeitures, to alter or amend this policy, to accept premiums in arrears or to extend the due date of any premium." Cases imputing to the company the representations made by the selling agent in connection with the application for insurance are not in point here. The alleged representations of McAfee had nothing to do with his activities as a salesman. Moreover, there is no evidence that McAfee purported or attempted to change the no-assignment provision of the policy.

The only inference that can be drawn from the record as to McAfee is that mistakenly he may have believed that the instrument which he drew would be effective as a change of beneficiary.

The conclusion reached, therefore, is that the instrument signed by Carter was not a change of beneficiary but an attempt to assign or transfer a security interest in the policy. Such an assignment, being merely the unilateral action of the insured, in violation of the terms of the policy, cannot be given effect as against the beneficiary.

█ Counsel in their brief discuss the question of whether or not the insurance policy is an Arkansas contract, whether or not the right of a beneficiary is vested or is a mere expectancy and the application of the doctrine of estoppel. In view of the ground upon which we have decided the case, these questions are not material. The insurance company by paying the money into court and filing the bill of interpleader waived any defenses which it may have had to the claims of either party; and there is no claim that appellant, as the beneficiary named in the policy, did not have at least such a qualified interest therein as to authorize her to maintain a suit to recover the proceeds of the insurance.

The judgment appealed from is reversed and the case remanded with directions to enter a decree in favor of appellant.

Reversed and remanded.