The Home Insurance Company of New York v. Cole.

4-4985

Opinion delivered April 4, 1938.

*Verne McMillen,* for appellant.

*D. H. Howell,* for appellee.

MEHAFFY, J. Appellee commenced this action in the Crawford circuit court alleging in his complaint that the appellant, Home Insurance Company, issued its policy of fire and tornado insurance to him, covering a loss or damage to a dwelling house in the sum of $300, a barn in the sum of $800, and hay, straw and feed in the sum of $500. The insurance was for a term of five years. The application for the insurance was taken by George C. Miller. The installment on the premium note was due August 1, 1936, but was not paid when due, and on September 12, 1936, the appellant wrote appellee advising him that under the terms of the policy the policy was suspended until the note was paid. On September 21, 1936, the appellee wrote appellant on the back of the letter which he had received that his policy had been lost or misplaced, and he was not in a position to pay the premium, but if the company would send him another policy and a note due and payable January 1, 1937, he would sign same and return it. On October 23, 1936, appellant wrote acknowledging a remittance of $47 and granted a binder until January 1, 1937. In the letter appellant stated that this accommodation was granted subject to all terms of the contract, and on the understanding that if the balance of premium, $40.36, was not paid by the time stated, appellee's policy would become suspended and inoperative. A duplicate policy was sent to appellee and the installment due January 1, 1937, was paid, and on February 27, 1937, the barn was burned and the contents destroyed. At the time of the fire it was alleged that the policy was in full force and effect. Appellee prayed judgment for $1,300, penalty, attorneys' fees and costs.

Appellant filed answer in which it denied all the material allegations in the complaint and pleaded certain

provisions of the policy in bar of the cause of action. One was that if the assured, without the written consent, should thereafter procure any other contract of insurance, this policy should be void. Another provision of the policy pleaded was that the policy or any indorsement thereon or attached thereto shall not be valid until countersigned by the manager or assistant manager, who alone shall have power or authority to waive or alter any of the terms or conditions of this policy, or to make or attach indorsements thereon. Another provision of the policy was that no one should have power to waive any provision or condition except such as by the terms of the policy may be subject of agreement added thereto, and provided that such provision or conditions should not be held to be waived unless the waiver was in writing and added thereto. The appellant alleged that appellee had violated these provisions of the policy and that it was, therefore, void.

There was a trial by jury and a verdict for $800 for the loss of the barn and $500 for loss of hay. Judgment was rendered for $1,300, for 12 per cent. penalty, $200 attorney's fee, and costs.

Motion for new trial was filed and overruled, exceptions were saved, and an appeal prayed and granted.

It was admitted by appellee that other insurance had been taken by him, and the contention of the appellant is that this avoided the policy. The proof showed that notice of the other insurance was given to George C. Miller, the agent of the insurance company, but it contends that he was merely a soliciting agent, and the appellant is not bound by notice to him. After the time that appellee alleges he notified Miller, Miller continued to accept premiums and, according to the evidence of appellee, made no objection. Appellee is corroborated by two other witnesses in the statement that he notified Miller, but Miller testifies that he had no such notice.

Appellant calls attention first to Cooley's Briefs on Insurance, 2nd Ed., Vol. 5, p. 3982, and quotes as follows: "In regard to the power of a soliciting agent, the generally accepted doctrine appears to be that an agent merely authorized to solicit insurance, deliver policies

and collect premiums, cannot, after the execution of the policy, waive any of its conditions. All of his functions have ceased save to receive premiums.''

If the evidence showed that Miller was merely a soliciting agent, notice to him would not be notice to the company; but Miller testified that if appellee had notified him it would have been his duty to notify the company. Again, the policy had this indorsement on it: ''This policy is valid only when signed by George C. Miller, agent at Mulberry, Arkansas,'' and signed by George C. Miller, agent. It appears, therefore, that Miller was not merely a soliciting agent, but that the policy was not valid until signed by him and that it was his duty to notify the company when appellee notified him of other insurance. If it were his duty to do so, it would be within the scope of his authority.

This court has held that one who is merely a soliciting agent has no authority to agree upon the terms to be inserted in policies or to change or modify or waive terms contained therein, and that knowledge of a soliciting agent cannot be imputed to the company he represents. *Sadler* v. *Fireman's Fund Ins. Co.,* 185 Ark. 480, 47 S. W. 2d 1086. In that case, however, the court said: ''The undisputed evidence showed that A. L. George was merely a soliciting agent of appellee.''

The evidence in the instant case shows that Miller was something more than a soliciting agent. According to his own testimony it was his duty to notify the company if the appellee gave him notice of other insurance. Moreover, the policy itself provided that it was not valid until signed by Miller.

In the same volume of Cooley's Briefs on Insurance above quoted, p. 3979, it is said: ''It may, however, be generally assumed that a local agent is intrusted with the business of the company in his locality. If he is, he has general authority to act for the company, and can waive conditions and forfeitures, unless his authority is specifically limited, to the knowledge of the insured.'' On page 3980 of the same volume, it is said: ''The rule stated applies particularly to local or resident agents of foreign insurance companies. . . . Foreign insur-

ance companies are, from necessity, compelled to act by agents. Those who do business with them must necessarily deal with agents. Sound public policy, protection to the citizen, require that these companies be bound by the acts and conduct of their agents done within the scope of their power, when the assured knows of no limitations on such powers."

While a mere soliciting agent would have no power to accept notice, and notice upon him would not bind the company, yet where he is the local agent of an insurance company, as Miller was in this case, notice to him was notice to the company.

Appellant calls attention to the case of *Merchants & Planters Ins. Co.* v. *Marsh,* 34 Okla. 453, 125 Pac. 1100, 42 L. R. A., N. S. 996. It is true that that case holds that the agent whose only power is to solicit applications for insurance and forward them to the company for approval, when, if approved, the company issues the policy and causes it to be delivered to the insured, has no power to waive any of the provisions of the policy so delivered, and notice to such agent of additional insurance taken out by the insured after the delivery of the policy, is not notice to the company. The court in that case said: "In this case the character of the alleged local agent or the nature or extent of his power and authority as such, are not in any way made to appear. He did not countersign, nor did his name anywhere appear on the policy or on the written application upon which it was issued. No attempt was made to show that he was clothed with power to take risks or execute and deliver policies for this company. The policy was executed at the home office of the company by the president and secretary of the company upon written application of the insured. It is not shown how, when, or by whom it was delivered."

In the instant case the agent was required to countersign the policy and it was not valid until he did this, and in addition to this, he testified that it was his duty to notify the company.

Under the evidence in this case, notice to the local agent was notice to the company.

It is next contended by the appellant that the evidence is not sufficient to support the finding of the jury that the barn was a total loss. The evidence on this question is in conflict, but the appellee testified that the barn was worth $3,300 and the hay $1,900. He also testified that the walls of the barn, which were built of stone, were 12 feet high and 18 inches thick; that he had worked with concrete, rock and stone, and built 400 miles of road in Arkansas and Oklahoma, and basing his opinion upon his experience as a contractor or in road building and building of stone culverts, in his estimation the barn was a total loss, and that if he had no insurance and wanted to build the barn, he would tear the walls clear down. There was some evidence that the walls, or a portion of them, could be used. There was a conflict in the testimony as to whether there was a total loss, and this made it a question for the jury.

"The cases all agree that the insurance of a building is upon the building, and not on the materials which compose it, and that the total destruction of a building, within the meaning of an insurance policy, means its complete destruction as a building, but not necessarily the absolute extinction of all its materials, or even that no part of it can be left standing. But just the extent to which a building must be destroyed in order to be a total loss is a question upon which the courts are divided. Some courts hold that if the building loses its identity and specific character by fire, although a large part of the materials or component parts are left standing, it is a 'total destruction' within the meaning of the policy. Other courts take the position that there cannot be a total loss so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the fire; and that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the fire, would, in proceeding to restore it to its original condition, utilize such remnant as such basis. Under the latter view, the remnant must have formed a substantial

part of the building." *St. Paul Fire & Marine Ins. Co.* v. *Green,* 181 Ark. 1096, 29 S. W. 2d 304; 14 R. C. L. 1302.

We have the positive testimony of the appellee, the owner, that if he desired to rebuild he would take down the remaining walls. The jury had a right to find that there was a total loss. In this case the additional insurance was $1,500 on the barn and $500 on the hay. That would make a total of $2,300 on the barn, and the appellee's evidence shows that it was worth more than $3,000.

The jury returned a verdict for $800 for the barn and $500 for the hay, making a total of $1,300, and in addition to this, 12 per cent. penalty and attorney's fee of $200. Appellant insists that in no event should the recovery be greater than $855, because, it argues, since the insurance on the barn was $2,300 and its policy was for $800, that appellee should not be permitted to recover on the barn more than 8/23rds of the loss. This would be true if appellee's evidence was ignored, or if the jury had found it to be untrue; but if his evidence is believed, then 8/23rds of the value would be $800.

We, therefore, think the jury was warranted in returning a verdict for $800 on the barn and $500 on the hay.

The judgment of the circuit court is affirmed.

GRIFFIN SMITH, C. J., dissents as to amount.