## GULLEDGE v. WORLD INS. CO. OF OMAHA, NEB.

### No. 14549.

United States Court of Appeals
Eighth Circuit.

Oct. 22, 1952.

Rehearing Denied Nov. 13, 1952.

Riddick, Circuit Judge, dissented.

Surrey E. Gilliam, El Dorado, Ark. (A. Milling Bernstein, Monroe, La., Ovid T. Switzer, Crossett, Ark., and Melvin E. Mayfield, El Dorado, Ark., on the brief), for appellant.

Malcolm W. Gannaway, Little Rock, Ark. (James B. Gannaway, Little Rock, Ark., on the brief), for appellee.

Before SANBORN, RIDDICK and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Plaintiff-appellant brought this action in the state court of Arkansas to recover $10,000.00 on the life of her husband, John W. Gulledge, upon a group life insurance policy. It was removed to the federal court on the petition of the defendant-appellee, a Nebraska corporation. The only question is whether the contract of insurance had become effective at the time of Mr. Gulledge's death on December 20, 1950.

Gulledge was employed by the Crossett Paper Mills of Crossett, Arkansas, which will be referred to as the employer. For several years the employees of that company had been carrying group life insurance. Different coverage being desired, the employer on behalf of its employees requested proposals from life insurance companies. The proposal of defendant was accepted. It was conditioned upon at least 75 per cent of all the company employees applying for insurance under the group policy. There was no distinction made in the formal proposal, the subsequent application, or the policy when issued, between union and nonunion employees. Gulledge was employed in an executive capacity and was not a member of the union. In submitting the proposals of the different insurance companies to its employees, the employer differentiated between the union and nonunion employees and by questionnaire first interrogated the union employees concerning their preference for the proposals offered. Prior to December 2, 1950, the union employees had indicated their preference for the proposal made by defendant-appellee, the World Insurance Company (which will hereafter be referred to as the

defendant). And prior to December 2, 1950, more than 75 per cent of the employees had made proper applications. On December 2, 1950, the employer made formal application to defendant for the group insurance. That policy was issued and states its effective date in the following language:

"World Insurance Company,
Omaha, Nebraska, U. S. A."
"A Mutual Legal Reserve Company"
(Hereinafter called the Company)
"Agrees to Pay

Upon receipt of due and satisfactory proof of the death, while this Policy is in force, of any insured employee of

Crossett Paper Mills

(Hereinafter called the Employer)
the amount for which such employee's life is insured hereunder in accordance with the classification schedule hereinafter set forth in Provision I.

In consideration of the application of the employer and the individual applications, if any, of the insured employees and the payment of premiums calculated in accordance with Provision 8 hereof, this Policy is issued for the term of one year from the third day of December, 1950, hereinafter called the policy date, with the privilege of renewal from year to year as hereinafter provided."

Thereafter, the employer sent questionnaires to its salaried employees to determine if they preferred defendant's proposal. On December 10, 1950, the questionnaires were counted and it was determined that the salaried employees did prefer defendant's proposal. Mr. Allen, office manager for the employer, and Mr. Burris, manager of defendant's field service, who was negotiating the insurance for defendant, agreed that the effective date of the insurance of the salaried employees who applied for it should be January 1, 1951. On December 15, 1950, Mr. Gulledge made formal and proper application for the insurance. On December 20, 1950, he was accidentally killed in an automobile accident.

The policy provides that it, the application made therefor by the employer, and the

applications of the employees, constitute the contract of insurance. The application of the employer provides as to the effective date:

"The insurance for eligible employees will become effective on a date agreed upon by the Employer and the Company provided at least 75%, if on a contributory basis, or 100% if on a noncontributory basis, but not less than fifty of the eligible employees have made application for the insurance."

Gulledge was an "eligible employee", the insurance was on a "contributory" basis, i. e., part of the premiums was to be paid by the employer and part by the employee, and, as heretofore noted, more than 75 per cent of the employer's employees had applied for the insurance.

The policy further provided that each eligible employee would be insured without evidence of insurability immediately upon making written application for insurance on the defendant's form. Gulledge's application, above referred to, was made on such form.

The policy contained the familar provision that only the President, a Vice-President, the Secretary or an Assistant Secretary of the defendant had power to "change, modify, or waive the provisions of this *Policy* and then only in writing", (italics ours) and that the defendant "shall not be bound by any promise or representation heretofore or hereafter made by or to any agent or person other than as above."

The application and policy contained provisions for the payment and adjustment of premiums by the employer on the individual employee's insurance. If the policy was effective on December 3, 1950, those provisions are such that Gulledge's premium would not be in default, he having authorized its deduction from his salary by the employer in his application for the insurance on December 15, 1950.

It is the defendant's position that the application provided that the insurance should be effective on the date agreed upon by defendant and the employer. That it was agreed between them that it was to be effective as to union employees on December 3, 1950, and on salaried employees on January 1, 1951. That since Gulledge was killed on December 20, 1950, and he was a salaried employee, his insurance was not in force at the time of his death. The trial court so held.

That there was an agreement between Mr. Allen and Mr. Burris that, for the convenience of the employer's accounting department, the insurance applied for by a salaried employee would not be effective until January 1, 1951, the evidence, dehors the policy and application (received over plaintiff's objection), clearly shows. But in the light of the provisions of the policy, above quoted, could that agreement be valid and supersede the effective date of December 3, 1950, stated in the policy? It could not. It is true that the application preceding the policy provides that the effective date of the policy should be agreed upon by the employer and the defendant. That date was agreed upon by the employer and by defendant, over the signature of the defendant's President and Secretary, in the provision of the policy fixing its effective date. In that provision there is no qualification or reservation that it should be effective on the date fixed as to only a part of the employees. That provision of the policy carried into execution the provision in the employer's application that the effective date should thereafter be fixed by agreement. That effective date thereupon became a part of the policy. There is no ambiguity in its unqualified statement that the term of the insurance began on December 3, 1950. On and after that date, by the terms of the contract, any eligible employee who had not theretofore applied could obtain the coverage of the policy by applying therefor and be covered immediately upon making the application.[1] Mr. Burris was the manager of defendant's field service. By the express provision of the policy he had no authority

1. There was a time limit within which the application had to be made, but since Gulledge's application was made within that time, that provision is not material.

to modify any of its terms. His agreement with Mr. Allen that it was not to become effective until January 1, 1951, was as invalid and ineffective as an agreement between them that the amount of Mr. Gulledge's insurance was $100,000.00 instead of $10,000.-00 would have been. Sadler v. Fireman's Fund Ins. Co., 185 Ark. 480, 47 S.W.2d 1086; Metropolitan Life Ins. Co. v. Minton, 188 Ark. 456, 66 S.W.2d 627; Harrower v. Ins. Co. of North America, 144 Ark. 279, 222 S.W. 39; Home Ins. Co. v. Cole, 195 Ark. 1002, 115 S.W.2d 267; Carter v. Thornton, 8 Cir., 93 F.2d 529.

Defendant cites cases holding that the insurance company and a company making group insurance contracts may modify or terminate them without the consent of the employees insured thereunder. Those cases have no application here. They do not hold that an agent of an insurance company may modify or terminate a group insurance policy in the face of a specific provision of the policy that he has no authority to do so.

The cause is reversed and remanded with directions to enter judgment for the plaintiff with such penalty and attorney fees as may be just and proper.

RIDDICK, Circuit Judge (dissenting).

The appellant asserts that the findings of fact by the District Judge are supported by the undisputed evidence in the case. On these findings the judgment appealed from should be affirmed.

The Judge found:

In 1944 all employees of all divisions of the Crossett Companies were covered by the same contract of group insurance. In that year the insurance carrier asked for a rate increase. The employees of all divisions of the Crossett Companies except the Crossett Paper Mills voted to retain the insurance then in effect, the Crossett Companies paying the increase in rates. The Crossett Paper Mills employees elected to take an insurance plan offered by the appellee on an agreement that the Crossett Companies would pay the difference in cost between the new insurance and the old. This insurance covered all employees of the Paper Mills who applied for its benefits without regard to their union affiliations or to rates of pay.

In June 1950 the employees of divisions of the Crossett Companies other than the Paper Mills changed their plan of insurance to one of larger coverage. Thereafter, the union or hourly-paid employees of the Paper Mills division of the Crossett Companies began negotiations with the management for a broader insurance coverage. These negotiations were between the management and the representatives of the International Brotherhood of Paper Makers, the union representative of the Paper Mills employees. The matter was considered by the parties as a proper subject for collective bargaining between the management and the union representatives and was so treated. The salaried employees of the Paper Mills division not being members of the union were not represented in the negotiations. The negotiators decided to submit to the members of the Paper Makers Union two insurance plans, one submitted by the appellee and the other by the Metropolitan Insurance Company.

The members of the union voted in favor of the plan offered by appellee, under which the employees and the Paper Mills shared the premium cost, and which required for its adoption its acceptance by 75 per cent of the employees eligible for insurance under it. More than 75 per cent of the approximately 600 members of the union applied for insurance under the plan offered, and on December 2, 1950, the Crossett Paper Mills applied to appellee for insurance in accord with the plan. The application provided that the insurance should become effective on a date agreed on by the appellee and the Crossett Paper Mills. The appellee issued its Group Policy No. 3171, "which, pursuant to agreement between defendant, by its official representative, Mr. L. R. Burris, and Crossett Paper Mills, by its official representative, Mr. John Henry Allen, was made effective December 3, 1950, as to all union employees, and that date appears on the policy". Paragraph 13 of the policy provides that "This policy, together with the application of the Employer, copy of which is attached hereto, and the individual

applications, if any, of the insured employees constitute the entire contract * * *."

At the time the application for the policy was made the salaried employees of the Paper Mills, not subject to the provisions of the labor agreement, had not been given a chance to state a preference as to the insurance coverage desired or as to the carrier desired, or to participate in the insurance applied for. The management decided that the nonunion or salaried employees should have the same opportunity as that granted the union employees to choose between the plan of insurance offered by the Metropolitan Insurance Company and that offered by appellee. Accordingly, the management addressed a letter to the salaried employees of the Paper Mills division, advising them of the action of the union employees, enclosing information concerning the plans of insurance upon which the union employees had voted and a ballot upon which each salaried employee was requested to indicate by his vote whether he desired the Metropolitan plan, the appellee's plan, or no insurance, and asking that the ballots showing the preference of each individual employee be marked and returned by December 10, 1950. The salaried employees were advised of the contributions which the company would make to the payment of the cost of either plan accepted, and that the plan applied for by the company would be the one chosen by a majority of the salaried employee group. The Crossett Paper Mills and the appellee, through their authorized representatives, agreed in writing that if the salaried employees accepted the plan offered by appellee the insurance as to them would become effective as of January 1, 1951.

About December 10, 1950, the ballots of the salaried employees were returned and counted. Appellee's plan received the majority vote. The salaried employees were given an opportunity to apply for insurance under this plan and their applications were taken after December 10, 1950.

Finding No. 8 of the District Judge is as follows:

"As stated above, it was the agreement of Mr. J. H. Allen, representing Crossett Paper Mills, and Mr. L. R. Burris, representing the defendant, that the plan would become effective January 1, 1951, for the non-union salaried employees. Mr. Allen so advised all salaried employees who made application with him, and all the certificates subsequently issued, which came over his desk, carried that effective date. There was only one policy, No. 3171, issued, and the result of the agreement was to make the policy effective as to the union members and the plant guards on December 3, 1950, and effective as. to the non-union salaried employees on January 1, 1951. And, while the policy does not expressly provide, either in the body thereof or by rider, that the effective date as to non-union salaried employees is January 1, 1951, this date was agreed upon and fixed pursuant to the terms of paragraph 2 of the application, which is a part of the policy, to the effect that 'The insurance for eligible employees will become effective on a date agreed upon by the Employer and the Company.'"

The parties to the insurance contract were the Crossett Paper Mills and the appellee. The contract provided that the parties could fix its effective date. When it is seen, as the evidence shows, that the contract was to replace another on which premiums had been and were being paid, the practical necessity for this provision is apparent to prevent overlapping premium payments and to arrange for the cancellation of the old contract as of the effective date of the new. The provision of the contract permitting the parties to it to fix its effective date was within the competence of the parties as was their action under it in fixing different effective dates for different groups of employees who applied for different coverage at different times.

On the facts found by the trial judge, admitted by appellant to be supported by the undisputed evidence, it is conclusively established that Gulledge applied for insurance to become effective January 1, 1951, and that he authorized the Crossett Paper Mills to pay for insurance effective as of that date. Until the effective date of the

new policy and the cancellation of the old, he was still covered by the old policy. The appellant is now permitted to recover under an insurance contract to which Gulledge was never a party and never attempted to become a party.