PEYTON et al. v: METROPOLITAN LIFE
INS. CO. et al.
No. 14367.

Court of Appeal of Louisiana. Orleans.
June 12, 1933.

Charles J. Mundy, of New Orleans, for appellants.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellee Insurance Co.

Denegre, Leovy & Chaffe and Lloyd A. Ray, all of New Orleans, for appellee Railroad Co.

JANVIER, Judge.

This is a suit by the beneficiaries named as such in a certificate issued in connection with a policy of group insurance, the said certificate having been issued on the life of Gus Refuge by Metropolitan Life Insurance Company, one of the defendants. The other defendant, Morgan's Louisiana & Texas Railroad & Steamship Company' was the employer of Refuge at the time the certificate of insurance was issued and for several years thereafter, and plaintiffs seek to hold the said railroad company liable because, from the time of the issuance of the certificate until the termination of Refuge's employment, several years later, all premiums due by Refuge had been transmitted to the insurance company through the railroad company.

In the district court an exception of no cause of action filed by the railroad company was sustained and the suit dismissed as to that company.

When Refuge died, the insurance company refused to make payment under the certificate asserting that by its terms the protection afforded terminated immediately upon the severance of the employment of Refuge, and since Refuge had been discharged by the railroad company some time before his death, and since no premium payments had been made or accepted after such discharge, there could be no liability under the said certificate.

We will first consider the question presented by the exception of no cause of action filed by the railroad company and, therefore, direct our attention to the pertinent allegations of the petition, which are: That on December 31, 1923, a life insurance policy for $1,500 was issued by. the Metropolitan Life Insurance Company to Gus Refuge, who was designated as "an employee of S. P. Lines in Texas &

Louisiana"; that when the policy was issued Refuge was a laborer employed by Morgan's Louisiana & Texas Railroad & Steamship Company; that upon the death of the original beneficiaries plaintiffs were named as beneficiaries; that from the time of the issuance of the policy up to and including the 1st of December, 1926, the employer railroad company took from the wages of Refuge 70 cents each month on account of said insurance; that from September 1, 1926, until April 1, 1931, either Refuge or his representatives paid to the railroad the sum of 70 cents on account of such insurance; that when the 70 cents was tendered to the railroad on May 1, 1931, the said tender was refused with the statement that the insurance had been canceled, and that, thereafter, all tenders of the premiums were refused; that Refuge died on September 21, 1931, and that thereupon the beneficiaries demanded of defendant railroad and of defendant insurance company the proceeds of the policy.

After the suit was filed plaintiffs in response to a prayer for oyer filed the so-called policy of insurance which proved to be a certificate issued by the Metropolitan Life Insurance Company and not by the railroad company.

■ It is very difficult to understand how plaintiffs expect to hold the railroad company liable. There is no allegation that the company agreed to insure Refuge. There is no allegation that company withheld any of the premiums which it should have transmitted to the insurance company, and there is no allegation that payment of the proceeds of the policy has been made to it and that these proceeds have been withheld from the beneficiaries.

In a case somewhat similar to this, Carpenter v. Chicago & Eastern Illinois Railroad Company, 21 Ind. App. 88, 51 N. E. 493, 494, suit was brought on a group insurance policy against both the railroad company and the insurance company. The employer railroad company filed a demurrer to the complaint and this demurrer was sustained. The court said: "Does the complaint state facts sufficient to create a liability upon the part of the appellee? We are unable to find in the complaint any averment charging appellee with a breach of any contract declared upon, or the breach of any duty owing to appellants or their decedent. It is not charged that the moneys, or any part thereof, which appellee deducted from decedent's wages, was not applied to the payment of premiums due from him to appellee's co-defendant; neither is it charged that appellee received and retained any moneys from the said insurance company which were due appellants under the policy taken out for the benefit of Emanuel Carpenter, deceased. It seems clear to us that this action cannot be maintained against appellee.

There was no contract of insurance between appellee and Emanuel Carpenter. The contract of insurance was entered into between appellee and its co-defendant, and was for the benefit of said Emanuel Carpenter; he accepted its terms, and paid to appellee the amounts necessary to insure him the benefits; he was the third party for whose benefit the contract was made; and, under the well-settled rules of law as announced by the decisions of our supreme court, he, or his heirs in case of his death, could enforce the contract against the insurance company, if his injury was such a one as would bring him within the provisions of the policy."

In Gallagher v. Simmons Hardware Co. et al., 214 Mo. App. 111, 258 S. W. 16, is found a case very much resembling the case at bar and the court cited with approval Carpenter v. Chicago & Eastern Ry. Co., supra, and held that a suit could not be maintained against the employer. See, also, Wheeler v. Monsanto Chemical Works (Mo. App.) 263 S. W. 881.

In Couch's Cyclopedia of Insurance Law, Vol. 8, § 2094, we find: "Since a contract for group insurance is between the employer and the insurer for the benefit of the employee, the right of action by the employee or his beneficiary or representative is against the insurer, and not against the employer, between whom and the employee there is no contract of insurance. Citing Gallagher v. Simmons Hardware Co., 214 Mo. App. 111, 258 S. W. 16. In other words, since the purpose of group insurance is to insure the lives of employees for their benefit, they are the real parties in interest, and even though the employer is the nominal beneficiary, he is merely a trustee of the employees, or an agent for distribution, and the beneficiary or his personal representative is the real party in interest, and may sue on the contract, even though the policy was a gift. Citing Carruth v. Ætna Life Ins. Co., 157 Ga. 608, 122 S. E. 226."

It must be remembered that there is no charge in the petition that by transmitting premiums between September 1, 1926, and April 1, 1931, the employer estopped itself to deny that the insurance was in force. The plea of estoppel was not filed until after the exception of no cause of action had been sustained and the suit dismissed as against the railroad company.

As a matter of fact, as was shown, the employment had not terminated on September 1, 1926, as charged, but even if it had there is no allegation in the petition under which defendant railroad company can be held liable. On the contrary, the allegations of the petition show that the railroad company did everything it should have done and we, therefore, conclude that the exception of no cause of action was properly sustained.

When the matter came to trial on the merits, the insurance company produced evidence which showed that on September 1, 1926, the said Refuge, whose physical condition made it impossible for him to perform the services called for by the particular job to which he had been assigned, was placed on leave of absence by the railroad company and was not discharged, and that this was done so that he might not lose either his rights of seniority or his insurance protection. The evidence also shows that he remained nominally on leave of absence from September 1, 1926, until the end of April, 1931, and that at that time the railroad company having concluded that if it retained him nominally on the pay roll any longer it might render itself liable to place him on the pension rolls within a few months, decided that it could not allow him to remain any longer nominally on the pay roll, even though he drew no compensation except such part of the insurance premium as the railroad company paid for him each month in addition to that which he, himself paid. Therefore, in April, 1931, he was dropped from the pay roll of the company and his employment entirely terminated and, in proper manner, he was notified of the termination of his employment and the messenger who attempted to pay his premiums were told that they could no longer be accepted because of the termination of the employment. Refuge was advised that under the policy of insurance he could convert the insurance into a personal policy in no way connected with his employment and without physical examination. He did not do this and some months later he died.

Since, in the policy, it was stipulated that there would be no liability in the event of severance of the employment, and since it is shown that there was a severance of employment, it is evident that there can be no recovery as against the insurance company.

As we have stated, plaintiffs at the trial on the merits filed a plea of estoppel in which they sought to hold both defendants liable, regardless of the policy provision as to cancellation, because of the acceptance by the railroad from Refuge of premiums during the period in which he was carried on the pay roll of the company as on leave of absence. It is contended that his employment had, in fact, ceased on December 1, 1926, and that since the railroad company after that time continued to accept and to transmit premiums to the insurance company and since the insurance company continued to receive those premiums, both companies led Refuge to believe that inasmuch as the premiums were being accepted after that date the policy provision with reference to the termination of the insurance coverage in the event of termination of employment would not be considered as effective against him.

As we have already stated the plea of estoppel was not filed until after there had been rendered a judgment dismissing the suit as against the railroad company, and, therefore, that plea could, of course, have no effect as to that company.

Nor can it have any effect as to the insurance company because, so far as that company is concerned, there was no evidence to show that it had any information whatever as to any change in the employment status of Refuge from the first day on which the policy was originally issued. So far as the record shows, after the policy was issued the insurance company received no information as to any change in his status as an employee of the railroad company until it was advised in April, 1931, that his employment had ceased. Therefore, even conceding that the action of the railroad company in placing Refuge on the pay rolls on December 1, 1926, on leave of absence constituted a termination of his employment, we cannot see how such action on the part of the railroad company can create an estoppel against the insurance company since it is now shown that the latter company knew of any such change or that it acquiesced therein.

Even if the plea of estoppel could be availed of against the railroad company in spite of the final judgment rendered prior to the filing of the plea, the evidence, far from showing that the action of the railroad company in any way prejudiced the rights of Refuge, proves, on the contrary, that that company did everything in its power to assist Refuge in maintaining his insurance protection. That it would have been justified in entirely terminating his employment in 1926 is not denied. If it had done so Refuge would have lost his seniority rights, which would have meant that in the event of his regaining his health he would have been forced to return to work subject to such seniority rights as other employees might have acquired, and it would have also meant that at that time, December 1, 1926, his insurance protection would have terminated unless he chose to convert. Therefore, it was entirely for his own benefit that the railroad company carried him on the pay rolls as on leave of absence and, although it paid him nothing in cash, it did, in fact, pay for him a large part of the insurance premium due by him from month to month.

After so carrying him for five years the railroad officials realizing that although performing no actual services, he would soon be entitled to retirement on pension they determined to carry him no longer as on leave of absence. They, therefore, took the necessary formal action to terminate the employment and notified both the insurance company and Refuge himself. No estoppel could possibly result from such action.

At the time of the termination of the employment Refuge could have protected himself, as we have shown, by converting his insurance, without examination, into a personal policy, but he did not do so.

To hold that such conduct on the part of any employer, as we have outlined, can work an estoppel would be to say to any employer similarly situated that whenever an employee becomes disabled he may not be retained nominally on the pay roll, but must be discharged fully and completely and that all rights of seniority and all insurance privileges must be at once terminated. We cannot so hold.

██ Nor are plaintiffs entitled to receive any disability benefits which, in certain cases, are available to those insured under policies like that involved here. Under the terms of the policy such disability benefits are due only where the disability comes into existence prior to the sixtieth birthday of the insured and here, it is shown, that until he was more than sixty-one years of age Refuge was suffering from no disability.

It is ordered, adjudged, and decreed that the judgment in favor of Metropolitan Life Insurance Company, Inc., and against the plaintiffs, Mary Peyton and Albertha Moore, be and it is affirmed at the cost of plaintiffs.

Affirmed.