Isiah MAHONE, Appellant,

v.

HARTFORD LIFE AND ACCIDENT IN-
SURANCE COMPANY, HARTFORD,
CONNECTICUT, Appellee.

No. 48448.

Court of Appeals of Oklahoma,
Division No. 1.

March 2, 1976.

Rehearing Denied April 8, 1976.

Certiorari Denied Nov. 8, 1976.

Released for Publication by Order of
Court of Appeals Nov. 13, 1976.

Farmer, Woolsey, Flippo & Bailey, Inc.
by Robert J. Woolsey, Tulsa, for appellant.

Gable, Gotwals, Rubin, Fox, Johnson &
Baker by Elsie C. Draper, Tulsa, for appel-
lee.

BOX, Judge:

An appeal by Isiah Mahone, plaintiff in
the trial court, from the action of the trial
court in sustaining the motion for summary
judgment of Hartford Life and Accident
Insurance Company, and denying plaintiff's
motion for a summary judgment.

The trial was had on a stipulation of
facts, which is reproduced and reads as
follows:

STIPULATION OF FACTS

It is stipulated and agreed by and be-
tween the parties hereto for the purposes of
this action and this action only, as follows:

1. Fredonia M. Mahone, (hereinafter
Fredonia) was born on January 22, 1910.

2. Fredonia died on December 30, 1973.

3. Isiah Mahone, the plaintiff herein, is
the surviving widower of Fredonia.

4. On March 3, 1967, the Hartford Life
Insurance Company (hereinafter The Hart-
ford) issued to Oklahoma Community Ac-
tion Directors Association, Inc. group life
insurance policy No. GL 13201, a copy of

said policy being attached hereto, made a part hereof, and marked Exhibit A.

5. On March 4, 1970, the name of the policy holder was changed to Oklahoma Directors Association, Inc.

6. On March 13, 1970, Fredonia was employed as a Teachers Aide at New Day Child Development Center, part of the Tulsa Economic Opportunity Task Force.

7. On March 13, 1970, the Tulsa Economic Opportunity Task Force was a participating unit as defined according to the terms and conditions of the above Policy No. GL 13201.

8. A Group Insurance enrollment card was prepared for Fredonia as of the date of her employment, bearing an effective date for coverage under Policy No. GL 13201 of April 13, 1970 and naming Isiah Mahone, husband, beneficiary; a copy of said group insurance enrollment card is attached hereto, made a part hereof, and marked Exhibit B.

9. A certificate of insurance in the form of a booklet labeled "Group Insurance Plan" was issued by The Hartford bearing the legend:

```
        CERTIFICATE OF INSURANCE
                 under
        Group Insurance Policies
    GL-13201 EFFECTIVE MARCH 3, 1967
                 and
    GRH-13201 EFFECTIVE MARCH 3, 1967
              Issued by
             The Hartford
                 to
OKLAHOMA DIRECTORS ASSOCIATION, INC.
```

.    .    .    .    .

"This individual Certificate is furnished in accordance with and subject to the terms of said group policies and is merely evidence of insurance provided under said group policies which insurance is effective only if the employee is eligible for insurance and becomes and continues insured in accordance with the terms, provisions and conditions of said policies."

A copy of said group insurance plan and certificate is attached hereto, made a part hereof, and marked Exhibit C.

10. On March 3, 1971, the name of The Hartford was changed to Hartford Life and Accident Insurance Company.

11. August 11, 1972, was the last day Fredonia was actively at work as a Teachers Aide at New Day Child Development Center of Tulsa Economic Task Force. On that date, Fredonia was 62 years old. A copy of the time and attendance record of Fredonia for the period ending August 15, 1972, is attached hereto, made a part hereof, and marked Exhibit D. A copy of a request for vacation time of two days beginning August 14, 1972 and ending August 15, 1972, signed by Fredonia, is attached hereto, made a part hereof, and marked Exhibit E. The time and attendance report for Fredonia for the pay period ending August 31, 1972, is attached hereto, made a part hereof and marked Exhibit F.

12. A request for vacation time signed by Fredonia for a period of time from August 15, 1972, through August 25, 1972, is attached hereto, made a part hereof, and marked Exhibit G.

13. A request for sick leave for a period of time from August 28, 1972, to August 31, 1972, signed by Fredonia, is attached hereto, made a part hereof, and marked Exhibit H.

14. Fredonia did not work after August 11, 1972, and was thereafter permanently and totally disabled until the date of her death, December 30, 1973.

15. There is no evidence that Fredonia made any request for conversion of insurance pursuant to Article 5, Conversion Privilege, of Policy No. GL 13201.

16. There is no evidence that Fredonia filed any notice of disability pursuant to any section of Policy No. GL 13201.

17. Subsequent to August 11, 1972, Tulsa Economic Task Force pursuant to an election under Article 2, Termination Date of Insurance, Policy No. GL 13201, continued to pay premiums on behalf of Fredonia through January, 1973. The following documents are attached hereto and made a part hereof:

(a) Tulsa Economic Task Force's report of wages paid to Fredonia M. Mahone, for the third quarter of 1972, marked Exhibit I.

(b) A check of the Tulsa Economic Task Force in the amount of $2,130.37 and a worksheet showing premiums by account for the period ending December 31, 1972, marked Exhibits J and K.

(c) A report of premiums dated January 1, 1973, marked Exhibit L.

(d) A check of Tulsa Economic Task Force for the period ending January 31, 1973, and a worksheet showing premiums by account marked Exhibits M and N.

(e) A report of January premiums, marked Exhibit P.

18. On February 1, 1973, tulsa Economic Task Force ceased to be a participating unit under Policy No. GL 13201, issues by The Hartford to Oklahoma Directors Association, and individual coverage thereunder for Fredonia ceased pursuant to Article 2, Termination Date of Insurance, which reads:

"Such Group Life Insurance as is afforded by the policy with respect to an Insured Person shall terminate on the earliest to occur of the following dates:

. . . . .

(5) The date on which the Insured Person's unit ceases to be a Participating Unit."

unless the insurance was extended beyond that date pursuant to Article 7 of the policy or by the provisions of Part 4 of the certificate hereinafter set forth.

19. On July 26, 1974, Mario J. Armillei, Group Claim Department, The Hartford, addressed a letter to J. Neal Clark, agent for Oklahoma Directors Association, Inc., setting forth the need for a new form of Proof of Death in support of Fredonia's claim, as the form submitted was obsolete. A copy of the correspondence from The Hartford to J. Neal Clark, Agent, was forwarded to Norma Swyden of the Tulsa Economic Opportunity Task Force, on August 2, 1974. Copies of this correspondence are attached hereto, made a part hereof, and marked Exhibits Q and R.

20. Thereafter, an amended claim was filed on the form provided; a copy of the claim and the attending physician's statement is attached hereto, made a part hereof, and marked Exhibit S.

21. On August 28, 1974, The Hartford, by Mario Armillei wrote a letter to J. Neal Clark, Administrator of the Oklahoma Directors Association, wherein among other things, Mr. Armillei said:

"According to the policy provisions all insurance terminates on the date on which Insured Person's Unit ceases to be a Participating Unit.

"Therefore, since Mrs. Mahone's Unit ceased to be a Participating Unit on February 1, 1973, her coverage also terminated on that date. As there was no insurance in force at the time of her death on December 30, 1973, our company has no liability in her passing."

A copy of this letter is attached hereto, made a part hereof, and marked Exhibit T.

22. Article 7 of the policy provides in material part as follows:

"If any person, prior to his 60th birthday and while insured under the policy, becomes totally disabled, as defined herein, and if due proof of such disability is furnished to The Hartford within one year from the date on which such person's active employment terminated as a result of the disability, The Hartford shall:

1. continue in force the Amount of Insurance applicable to such person according to his classification on the date his active employment so terminated: and

2. waive the premiums applicable to such insurance, such premium waiver to begin on the date his active employment so terminated, for a maximum period of one year.

"If, during such year, due proof is furnished to The Hartford that the disability of such person is total and permanent, The Hartford shall, except as hereinafter provided, continue to waive the premiums applicable to the insurance of such person.

"If the policy provides for a reduction in the Amount of Insurance at a specified

age or at any other specified time, the Amount of Insurance applicable to such person shall be reduced in accordance with such provision upon his reaching such age or at such time.

. . . . .

"A person shall be deemed to be totally disabled if he is disabled by bodily injury or disease to the extent that he is thereby prevented from engaging in any business or occupation and from performing any work for compensation or profit. Without prejudice to any other cause of total disability, the entire and irrecoverable loss of the sight of both eyes, or the severance of both hands at or above the wrist, or of both hands at or above the wrist, or of both feet at or above the ankles, or of one entire hand at or above the wrist and of one entire foot at or above the ankle, shall be considered as total disability.

"Total and permanent disability shall mean total disability as described in the preceding paragraph which has existed continuously for a period of not less than nine months and presumably will be permanent for the remainder of said person's life.

. . . . .

"Termination of the policy for any reason shall not affect any insurance maintained in force in accordance with the terms of these provisions."

23. Part 4 of the certificate provides: "If, while insured under the Group Life Insurance Policy, and before attaining age sixty, you become totally disabled and remain so disabled, your insurance will continue in force during the continuance of such total disability provided the required proof of disability and its continuance is submitted to The Hartford at its Home Office. 'Totally disabled' means that you are disabled by bodily injury or disease for not less than nine months and will be further prevented from engaging in any business or occupation and from performing any work for compensation or profit. As termination of total disability you should inquire of your rights under the Conversion Privilege of the Group Life Insurance Policy.

"If the policy provides for a reduction in the amount of insurance at a specified age or at any other specified time, the amount of your insurance will be reduced in accordance with such provision upon your attaining such age or at such time.

"If, on the date your insurance terminates, you are totally disabled by bodily injury or disease and are further prevented from engaging in any business or occupation and from performing any work for compensation or profit, and if

(a) your death occurs within twelve months of that date,

(b) you are so disabled continuously from the date your insurance terminates until the date of death, and

(c) you qualify, or would have qualified if you had been disabled for at least nine months, for the continuation of insurance set forth in the preceding paragraph, except that the required proof of disability has not yet been both submitted to and approved by The Hartford, and

(d) Due proof that these conditions have been met is submitted to The Hartford within one year of the date of death,

the 'Death Benefit' will be paid to your beneficiary."

24. It is further agreed and stipulated that there are no genuine or material issues of fact and that this litigation involves pure questions of law.

After extensive briefs were filed by all parties and argument of counsel was heard, the trial court held as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment of the defendant, The Hartford, as against the plaintiff Isiah Mahone should be, and the same is hereby granted, and exceptions allowed to the plaintiff.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment of the plain-

tiff, Isiah Mahone, as against the defendant, The Hartford, should be, and the same is hereby denied."

Appellant appeals, alleging error as follows:

## "PROPOSITION I.

"The restriction for disability benefits for people over age 60 is in violation of the Oklahoma Statutes providing for group policies, and also is a violation of Oklahoma Statutes prohibiting unfair methods of competition and unfair discrimination between individuals of the same class and essentially the same hazard. The insurance laws of the State of Oklahoma prohibit discrimination between employees by reason of age.

## "PROPOSITION II.

"There are inherent ambiguities in the terms of the policies and in case of ambiguities they should be construed against the insurance company who created the ambiguities.

## "PROPOSITION III.

"Acceptance of the premiums estops the company from contending lack of coverage where the insured was over 60.

## "PROPOSITION IV.

"That portion of the contract of insurance limiting extension of benefits where the employee is over 60 is void as in violation of federal law prohibiting age discrimination."

■ We will first dispose of appellant's Proposition IV. For the first time in the brief on appeal, appellant raises an argument based on the federal law regarding the hiring of workers between the ages of 40 and 60. Since no argument based on the age discrimination in Employment Act, U.S. C.A., Title 29, Section 623, was presented to the trial court nor fairly comprised within the grounds alleged there and in appellant's unamended petition in error, it cannot be asserted for the first time in appellant's brief. See *Midwest City v. Eckroat,* Okl., 387 P.2d 873, Syl. 5.

Appellant bases his contentions in Proposition I on the following statutory provisions: 36 O.S.1971, § 1204.

"The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

"7. Unfair Discrimination

"(a) Making or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract.

"(b) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever."

The Oklahoma Statutes as to Group Life Insurance applicable to group policies are as follows: 36 O.S.1971, § 4101.

"Classes of policies permitted, eligibility; premiums; number insured; amount of insurance.—No policy of group life insurance shall be delivered in this state unless it conforms to one of the following descriptions:

"A. A policy issued to an employer, or to the trustees of a fund established by an employer, which employer or trustees shall be deemed the policy-holder, to insure employees of the employer for the benefit of persons other than the employer, subject to the following requirements:

"1. The employees eligible for insurance under the policy shall be all of the employees of the employer, or all of any class or classes thereof determined by conditions pertaining to their employment. . . .

"2. The premium for the policy shall be paid by the policy holder, either wholly from the employer's funds or funds contributed by him, or partly from such funds and partly from funds contributed by the insured employees,

or from funds contributed wholly by the insured employees. A policy on which part or all of the premium is to be derived from funds contributed by the insured employees may be placed in force only if at least seventy-five percent (75%) of the then eligible employees, excluding any as to whom evidence of individual insurability is not satisfactory to the insurer, elect to make the required contributions. A policy on which no part of the premium is to be derived from funds contributed by the insured employees must insure all eligible employees, or all except any as to whom evidence of insurability is not satisfactory to the insurer.

"3. The policy must cover at least ten (10) employees as of date of issue.

"4. The amounts of insurance under the policy must be based upon some plan precluding individual selection either by the employees or by the employer or trustee."

The termination portion of said group policy reads as follows:

"Such Group Life Insurance as is afforded by the policy with respect to an Insured Person shall terminate on the earliest to occur of the following dates:

.     .     .     .     .

"5. The date on which the Insured Person's unit ceases to be a Participating Unit."

The policy provision in question reads as follows:

"Article 7. Waiver of Premium.

"A. Benefits.

"If any person, prior to his 60th birthday and while insured under the policy, becomes totally disabled, as defined herein, and if due proof of such disability is furnished to The Hartford within one year from the date on which such person's active employment terminated as a result of the disability, The Hartford shall:

"1. Continue in force the amount of insurance applicable to such person according to his classification on the date his active employment so terminated; and

"2. Waive the premiums applicable to such insurance, such premium waiver to begin on the date his active employment so terminated for a maximum period of one year."

The booklet issued by the company to the insured provides as follows:

"4. Extension of Insurance if Disabled.

"If, while insured under the Group Live Insurance Policy, and before attaining age sixty, you become totally disabled and remain so disabled, your insurance will continue in force during the continuance of such total disability, provided the required proof of disability and its continuance is submitted to The Hartford at its Home Office. 'Totally disabled' means that you are disabled by bodily injury or disease for not less than nine months and will be further prevented from engaging in any business or occupation and from performing any work for compensation or profit. At termination of total disability you should inquire of your rights under the Conversion Privilege of the Group Life Insurance Policy.

"If the policy provides for a reduction in the amount of insurance at a specified age or at any other specified time, the amount of your insurance will be reduced in accordance with such provision upon your attaining such age or at such time.

"If, on the date your insurance terminates, you are totally disabled by bodily injury or disease and are further prevented from engaging in any business or occupation and from performing any work for compensation or profit, and if:

"(a) your death occurs within twelve months of that date, and

"(b) you are so disabled continuously from the date your insurance terminates until the date of death, and

"(c) you qualify, or would have qualified if you had been disabled for at least nine months, for the continuation of insurance set forth in the preceding paragraph, except that the required proof of disability has not yet been

both submitted to and approved by The Hartford, and

"(d) due proof that these conditions have been met is submitted to The Hartford within one year of the date of death,

"the 'Death Benefit' will be paid to your beneficiary."

Appellant under his Proposition I urges that the provisions in the master policy and certificate which limit eligibility for premium waiver and extended death benefits to employees who become disabled prior to attaining the age of sixty violate 36 O.S. 1971, § 1204 and 36 O.S.1971, § 4101, supra. The question is whether the Oklahoma Insurance Code forbids an insurer from using age as a criterion for judging eligibility for special disability benefits under a group insurance policy.

Other jurisdictions have held that the insurer is free to refuse disability benefits to an employee when disability has come into existence after reaching the maximum age provided in the policy. *Pool v. Protective Life Ins. Co.,* 26 Ala.App. 161, 155 So. 631; *Metropolitan Life Ins. Co. v. Minton,* 188 Ark. 456, 66 S.W.2d 627; *Hollis v. Travelers' Ins. Co.,* 49 Ga.App. 274, 175 S.E. 33; *Sowinski v. Travelers' Ins. Co.,* 180 N.E. 604 (Ind.App.); *Peyton v. Metropolitan Life Ins. Co.,* 148 So. 721 (La.); *Rogers v. Metropolitan Life Ins. Co.,* 265 Mich. 202, 251 N.W. 312 (Mich.); *Coker v. Aetna Life Ins. Co.,* 188 S.C. 472, 199 S.E. 694; *McLain v. American Glanzstoff Corp.,* 166 Tenn. 1, 57 S.W.2d 554 (Tenn.). See also 19 Couch on Insurance 2d § 82:12 (1968). The Supreme Court of Oklahoma has not considered this issue but it has indicated by dictum in a per curiam opinion that it is in accord with these jurisdictions. *Prudential Insurance Co. of America v. Mosley,* 179 Okl. 451, 66 P.2d 35. In none of these cases has the court considered the question in the context of a statute prohibiting discriminatory acts by the insurer, but it is nevertheless worth noting that the practice of including age restrictions in group disability benefit policies is widespread and approved. 1 Apple-

man, Insurance Law and Practice § 44 (1941).

Title 36 O.S.1971, § 1204 provides in pertinent part, as follows:

"The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business in insurance:

"7. Unfair Discrimination

"(a) Making or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract.

"(b) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever."

■ Essentially this section of the statute prohibits unfair discrimination between individuals of the *same class* and *equal expectation* of life. The statute is similar to the anti-discrimination statutes in use in most jurisdictions. Appleman has observed that such statutes are designed to insure that equal terms are fixed in policies to policyholders of like classes. 12 Appleman, supra, § 7017. These statutes prohibit such practices as hidden rebates or preferential treatment with respect to the cost of the policy or the benefits allowed so that all policyholders that fall within the same class will pay alike and will be treated alike. Thus in *Metropolitan Life Ins. Co. v. Lillard,* 118 Okl. 191, 248 P. 841 (Okl.), a policy which provided that if there was no loan indebtedness against the cash surrender value the insured could elect one of three options, but if there was indebtedness against the surrender value the insured had no option, was held void because it discrimi-

nated against policyholders of the same class.

■ In the context of this case, the prohibition of the statute would reach discrimination among the full time employees of roughly the same expectation of life as the decedent. If the decedent, for example, had been singled out from the class of employees of similar life expectancy, and had been denied the right to benefits accorded the others, or forced to pay more for these benefits than the others, the statute would have been violated. But such patently offensive practices are not at issue in this case. Indeed, it is uncontroverted that all employees in the decedent's class and expectation of life were treated in the same manner: the decedent was charged no more for coverage and she was eligible to receive the same general benefits. She was, of course, ineligible to receive the special premium waiver and extended death benefits if she suffered a permanent disability after attaining the age of 60; but so were all others of her class. All employees were subject to the same provisions; none could receive the special benefits if they became disabled following their 60th birthday. We conclude that a provision excluding all employees from eligibility for special disability benefits after they attain a stipulated age does not offend 36 O.S.1971, § 1204.

We now turn to the question of whether such a provision infringes upon 36 O.S.1971, § 4101. Subsection A(1) provides, in substance, that the employees eligible for group insurance must be all of the employees, or all of any class of employees, as determined by "conditions pertaining to their employment." (The statute has recently been amended but the amendments do not apply to this case. See 36 O.S.Supp. 1975, § 4101.) Appellant contends that the master policy here in issue is void to the extent that it purports to limit eligibility benefits to employees who become disabled prior to reaching the age of 60. As authority for this proposition appellant places great reliance upon *Dudrey v. Equitable Life Assurance Society,* 170 Misc. 418, 10 N.Y.S.2d 639 (N.Y.Sup.Ct.). The *Dudrey*

case concerned an interpretation of a New York insurance statute that was very similar to Section 4101 A(1). The New York court held that a group insurance could not limit the eligibility of its applicants to a fixed age limit of 60 because the age of the employees was not a "condition pertaining to the employment" within the meaning of the New York statute.

We do not consider the *Dudrey* case valid authority for the contention that the policy in the instant case must be void. The *Dudrey* case involved the complete exclusion from group insurance coverage of all employees who were over the age of 60. The case stands only for the proposition that an insurer is forbidden by a New York insurance statute similar in many respects to the Oklahoma statute, to deny group insurance coverage to some employees on the basis of their age.

The instant case presents a considerably different set of facts. Coverage under the master policy at issue here was available to all full time employees regardless of age— no employee was completely denied coverage; and the decedent was unquestionably covered by the group policy until the Tulsa Equal Opportunity Task Force terminated coverage on February 1, 1973. If Mrs. Mahone had died prior to the date of termination appellant would have been entitled to the death benefits regardless of her age. She also was eligible to apply for certain weekly disability benefits when she left work in August, even though she was at that time 62 years old. The policy merely excluded her from the right to special continued coverage benefits provided by the premium waiver and extension of death provisions because she became disabled after having reached her 60th birthday.

We think that Section 4101 merely requires that the policy insure all eligible employees and that all employees or all of any class of employees be eligible for such coverage. The policy here at issue clearly insured all eligible employees, including the decedent. We are therefore of the opinion that the policy does not violate Section 4101.

Next appellant's argument regarding ambiguities, while the cases cited by appellant are good law where in fact there is an ambiguity, where there is none his cases have no relevance or persuasiveness. Because Mrs. Mahone was clearly beyond sixty years of age on the date of her disability, there is simply no way in which the provisions of this policy can be fairly read to provide coverage.

Appellant's contentions regarding estoppel or waiver can best be answered by the statement of the Supreme Court of Oklahoma in *Prudential Insurance Co. of America v. Mosley,* 66 P.2d 35, wherein at p. 40 the Supreme Court stated:

"If we may arbitrarily read out of this policy the specified beginning date of the period within which the disability must occur, in order to waive premiums, and read into it a different beginning date, then we may with impunity change any other term of the policy which does not suit our fancy, and if we may do this, we may write for the parties a whole new policy."

Other jurisdictions agree with our Supreme Court. We think that the ruling of the North Carolina Court in the case of *Hunter v. Jefferson Standard Life Ins. Co.,* 86 S.E.2d 78, best expresses the question of waiver or estoppel wherein they held as follows:

"1. Waiver or estoppel cannot create a contract of insurance, or so apply as to bring within the coverage of the policy, property, loss, or risk which by the terms of the policy is expressly excepted or otherwise excluded."

For the reasons herein stated, we affirm the judgment of the trial court.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.